[No. 5075.]

## HENRY F. WILLIAMS v. SAMUEL H. DWINELLE, JUDGE OF THE DISTRICT COURT OF THE FIFTEENTH JUDICIAL DISTRICT.

ADJUDGING TRUSTEE GUILTY OF CONTEMPT.—The provisions of the Code permitting the court to adjudge a party guilty of contempt, who has in his possession, as a trustee, money which he fails to deliver to the *cestui que trust*, or to the clerk of the court, after an order made requiring such delivery, do not apply to a case where the trust fund is made up in part of money which the trustee ought to have received but has not received, such as interest which he has failed to receive by having neglected to place trust funds in his hands out at interest.

COURTS OF EQUITY AND TRUSTEES.—It was not the practice of courts of equity to adjudge a party guilty of contempt who failed to obey an order to deliver up money held in trust, unless the money was at the time actually in the hands of the trustee, or, having been in his hands, had been paid out by him under such circumstances as would involve a breach of trust.

APPLICATION to the Supreme Court for writ of prohibition.

Jacob C. Beideman died on the eighth day of July, 1865, seized of a large amount of real estate in the city and county of San Francisco, leaving a will in which he nominated Samuel H. Parker executor without bonds, with direction to the executor to sell, within one year, all said real estate except such portions as were by the will given, devised, and bequeathed, in trust, for the benefit of the testator's niece and nephew, Katie and Willie Ketler. The testator, in said will, made several specific bequests of money, and then devised to the plaintiff, Williams, $20,000 in money, proceeds of the sale, in trust for his said nephew and niece, to be put out at interest, and the interest to be expended for their education and support until the said

Willie arrived at his majority, and then to be divided between them; and also devised certain lots to said Williams in trust for said Willie and Katie, and the one-half of all the remainder of his property to be held also in trust for said Willie and Katie. The testator also devised to said Williams $20,000, to be in like manner held and used in trust for the testator's sister, Alice C. Conroy, and her children and their descendants, and one-half of all the remainder of his property to be likewise held in trust for said Alice and her children and their descendants. The will provided that the trustee should not give bonds. Said Katie married one Kidwell after the death of the testator, and died in 1871, leaving three children. Said Alice C. Conroy died after the publication of the will, but before the death of the testator, leaving four children. One of the last-named children, Clara, also married and had, at the time this suit was tried, four children. The will was probated and the plaintiff accepted of the trust, and entered upon the discharge of its duties. Parker, the executor, received letters testamentary, and died in 1866, whereupon William R. Satterlee and John W. Brummagim were appointed administrators with the will annexed. Satterlee died in December, 1866, and Brummagim became sole administrator. The administrator sold the real estate on the twenty-fourth day of July, 1867, at auction, for the sum of $540,886, one-fourth in cash, one-fourth payable in one year, one-fourth payable in two years, and one-fourth payable in three years, deferred payments bearing interest at eight per cent. per annum. The trustee received from the administrator, proceeds of the estate, between the thirty-first day of December, 1866, and the tenth day of October, 1870, $289,899.75, of which $255,183.35 was a part of the principal sums realized at the sale, $33,605.10 was interest which had been received on deferred payments, and $1,111.30 was rent of real estate which had been specifically devised to the plaintiff, in trust for said Willie and Katie Ketler. The plaintiff also received from said rents the further sum of $13,362.48, of which he expended for taxes and repairs on the property the sum of $3,314.88. The plaintiff also

received certain other sums for rents of property specifically devised, and paid out other sums for repairs and taxes, and the net amount of rents received by him as trustee from the property specifically devised to said Ketlers was $9,298.40. The plaintiff did not separate nor keep in separate funds the two sums of money received on the two trusts created in favor of the Ketlers and Mrs. Conroy and her descendants, and mixed the trust funds with his own, and deposited them in a bank in his own name. The plaintiff did not put the two sums of $20,000 each out at interest, as he was required to do by the will, nor did he put any of the trust money out at interest, although he could, within thirty days after its receipt, have invested the money on mortgage security at eight per cent. per annum.

On the sixth day of October, 1870, the plaintiff Williams commenced an action in said court against the *cestuis que trust*, and in his complaint alleged that he had performed valuable services for the estate, and had faithfully discharged his duties as trustee, and asked that a reasonable compensation be allowed him out of the trust fund, and that an account be taken, and a new trustee be appointed, and that he be at liberty to assign and convey to his successor all property held by him in trust. The complaint did not state how much money he had received or paid out. On the fifteenth day of December, 1870, the court accepted the resignation of Williams as trustee, and appointed Joseph A. Donohue and Joseph G. Eastland in his place. The court, in taking the account, charged the trustee with $48,428.45 as interest which he ought to have earned and received by putting the trust money in his hands out at interest, and found that there remained due by the plaintiff as trustee, on the twenty-seventh day of August, 1873, the sum of $110,331.12, and directed that upon the payment of said sum to the clerk of the court, he should be discharged from all liability; and also made an order, on the twelfth day of November, 1875, that that he forthwith pay said sum to the clerk of the court. The trustee having failed to pay the money to the clerk, the court, on the nineteenth day of February, 1876, made an order that he show cause on the twenty-fifth day of Febru-

ary, 1876, why he should not be adjudged guilty of contempt in disobeying the order to pay the money to the clerk. The trustee, on the first day of March, 1876, petitioned the supreme court for a writ of prohibition to prevent the defendant Dwinelle, as judge, from adjudging him guilty of contempt. The defendant demurred to the petition.

*Wilson & Wilson,* for the Petitioner.

The Code of Civil Procedure (sec. 572 *et seq.*) relates in one part to the depositing of money in court, and "establishes the law" in that respect. It limits such payments in several particulars as follows:

First, as to time, such orders can only be made before final judgment.

Second, they can only be made where it is admitted by the pleadings, or shown upon the examination of the parties, that he has in his possession, or under his control, any money or other property capable of delivery, which is the subject of litigation. In this case it was not admitted by the pleadings, nor found by the court, that the sum directed by the order to be paid was ever in the petitioner's hands. (*State* v. *Conklin,* 19 Cal. 512: *Pierpont* v. *Crouch,* 10 Cal. 316; *Sacramento* v. *Bird,* 15 Cal. 294. A writ of prohibition will be granted in such a case. (*State* v. *Ridgell,* 2 Bailey (S. C.) 561; 3 Bl. Com. 112.)

*Doyle, Barber and Scripture,* for the Defendant.

The interpretation of the Code given by the petitioner is too narrow. The District Courts derive their jurisdiction as courts of equity from the Constitution, not the Code. The latter only regulates their mode of proceeding, and if it can limit their powers, is not to be so construed, save when the language is unequivocal. The power to take possession of the subject-matter of the action and deal with it specifically is one of the distinctive and essential attributes of equity jurisdiction. It is just one of the points where the plaintiff was "remediless at and by the strict rules of the common law, and could only have adequate relief from a court of equity."

Prior to the Code, there was no mode in which, at law, a plaintiff could obtain *pendente lite* immediate relief on an admission of a part of his cause of action. The rule was otherwise in equity; and the sole object of the provision in question was to extend it, in substance, to all classes of actions. It left unimpaired the power of the court to deal appropriately with all matters which had been ascertained by judicial investigation. (*Gordon* v. *Rothley*, 3 Vesey, 572; *Russel* v. *Meacham*, 16 How. Pr. 193; *Merritt* v. *Thompson*, 10 How. Pr. 428; *Meyers* v. *Trimble*, 3 E. D. Smith, 607; *Quintard* v. *Secor*, 3 E. D. Smith, 614; 1 Hoff. Ch. Pr. 319, and notes 320.)

*C. T. Botts,* also for the Defendant.

The writ of prohibition will not be granted in cases when an appeal or writ of error lies, and it is so held in the cases cited for the petitioner.

By the COURT:

It did not appear by the pleadings or the findings that the entire sum of money directed to be paid into court, was at the time, or ever had been, actually in the hands of the trustee; on the contrary, it appears that the sum is made up in part of moneys which, in the opinion of the court, the trustee ought to have received, but had not received as interest. It is clear that the order was not within the class of orders provided for by the Code of Civil Procedure (Secs. 572, 3, 4.) And conceding that the power of the court is not limited by the provisions of the Code, no such authority appears to have been exercised by the Court of Chancery, unless the money was, at the time, actually in the hands of the trustee, or having been in his hands and improperly been paid out by him, as for example, paid out under such circumstances as would involve a breach of trust. (3 Danl. Ch. Pleading and Practice, 1822.) The demurrer to the petition for the writ of prohibition is, therefore, overruled, and the respondent is allowed the period of ten days from and after the service of a copy of this order in which to make such answer to the petition as he may be advised.