PEOPLE OF THE TERRITORY OF UTAH, Ex RE-
LATIONE ELI H. PIERCE, PETITIONER, v. J. B.
CARRINGTON, RESPONDENT.

COMMISSIONERS OF SUPREME COURT.--POWER TO PUNISH FOR CON-
TEMPT.— A commissioner of the supreme court has no power to
punish for contempt a person who publishes in a newspaper, and
circulates in that way certain articles concerning such commis-
sioner's court.

PROHIBITION.--WHEN IT LIES.—A writ of prohibition will lie against
a commissioner proceeding in such case as above to punish for
contempt, since appeal, *certiorari* or *habeas corpus*, is not an ad-
equate and speedy remedy.

ORIGINAL application for a writ of prohibition. The
opinion states the facts.

*Messrs. Sheeks & Rawlins*, for petitioner.

*Mr. Orlando W. Powers*, for respondent.

BOREMAN, J.:

This is an application for a writ of prohibition. The ap-
plicant for the writ, Eli H. Pierce, was arrested upon a
warrant issued by J. B. Carrington, a commissioner of this
court, upon a charge of contempt of the commissioner's
court, in writing and having published in the Salt Lake
Herald certain articles concerning said commissioner's
court. No copy of the articles has been furnished to us.
Pierce was bound over to answer to said commissioner
why he should not be punished as for contempt. There-
upon Pierce applied for the writ of prohibition to prevent
said commissioner from proceeding in the matter. An
alternative writ was issued and to this the defendant, Car-
rington, has demurred, and also filed his answer. The
principal ground of the demurrer is that the writ does not
state facts sufficient to constitute a cause of action. The
arguments of counsel were made upon the demurrer and,

upon the whole case. The first objection to which our attention is called is that the applicant for this writ did not apply to the commissioner's court for relief before applying for the writ of prohibition. In support of this objection we are referred to High, Extr. Rem., secs. 765–773. The cases upon which Mr. High relies have not been furnished us, but from their titles, and from what appears in the text, it would seem that the cases are all civil ones, and in regard to matters other than contempt. Whether they are cases where the lower courts were acting within their general jurisdiction or without it, does not appear. It would seem probable that they were the former. We can well see why, in a common civil action, the party should be required to apply for relief first to the lower court. The different steps to be taken in the case are pointed out, and are consequently in the "ordinary course of law." But it is a wholly different matter where the lower court is acting without authority, and wholly outside of his jurisdiction, in a summary proceeding, and one of at least semi-criminal character, and where the penalty would be of the same nature as that imposed in criminal cases. The later and better practice in England and in this country is different from that urged by the defendant, or at least in cases of contempt, where the lower courts were acting wholly outside their general jurisdiction. In the late English case of *Queen* v. *Lefroy*, 4 Moak, Eng. R. 134, as soon as the party was cited to appear and answer for his contempt, a prohibition was immediately applied for, and thereafter was made absolute. A similar practice was followed in California, in *People* v. *County Judge*, 27 Cal., 151, and in *Williams* v. *Dwinelle*, 51 Cal., 442. Any other rule would seem to be unreasonable. The applicant for the writ is by the order of the commissioner required to answer and show cause why he should not be punished as for contempt. He denies the right of the commissioner to require him to answer and make such a showing; and he charges that the commissioner has threatened to proceed in the matter, and to punish him, and this charge is not denied in the answer. Simple justice would say that if the commissioner has no legal authority—no jurisdiction

—to summon the applicant to answer and show cause why he should not be punished for such alleged contempt, the applicant should not be denied the writ by reason of the fact that before asking for it, he had not applied to the commissioner to dismiss the proceedings.

It is said that the applicant has a complete remedy by way of appeal. An appeal could only be resorted to after judgment. It would not prevent the unjust proceeding prior thereto, the expense, vexation, and annoyance of trial and an appeal would subject the applicant to the necessity of taking all the preliminary steps therefor, giving undertaking, etc., or of going to jail if unable to give the appeal-bond; and he would be required to follow the case into the district court, and take steps there for defence against the proceeding. When he should reach the district court, he would find that he could not have the issues heard and determined there upon which he was tried and condemned by the commissioner. The only question there to be settled would be that the commissioner was acting without authority, and that the proceedings should be dismissed. Such would not be an adequate remedy for the vexations, expense, and probably damaging trial through which he had, against his will, been forced. It is said that the applicant has ample remedy by way of *certiorari,* but *certiorari,* like appeal, has no effect until after action has been had by the commissioner. A *certiorari* can only be issued when the inferior court "has exceeded" its jurisdiction. It looks to the past and not to the future. It then would not prevent the illegal proceedings that should follow. The writ of prohibition is preventive, and not remedial, in its nature, and therefore is the appropriate writ to arrest the unauthorized proceeding, prior to judgment as well as after it, always, however, looking to the future, and not to the past.

Our attention is called to the fact that *habeas corpus* would be available. But it could avail nothing until after the party has been restrained of his liberty. In the present case that would take place after judgment, and when the person had been committed to prison. It would be neither a speedy nor adequate remedy. Therefore, neither

appeal, *certiorari,* nor *habeas corpus* would be "a plain, speedy, and adequate remedy" in this case. They would all leave the applicant without relief from vexations, annoyances, injury, and expense of the unauthorized proceedings of the commissioner. No citizen should be subjected to an illegal arrest, trial, or imprisonment. If the proceedings be illegal, and without the jurisdiction of the commissioner, the party should be relieved therefrom at the earliest possible moment. The purpose of the writ of prohibition is to arrest "the proceedings" when they are "without or in excess of the jurisdiction" of the tribunal assuming to exercise them. Laws Utah, 1884, p. 326, sec. 982. If the commissioner was acting simply "in excess" of his jurisdiction, an appeal, or writ of *certiorari* or *habeas corpus,* might be an adequate remedy, as upon the appeal the case would be tried *de novo,* and it or *certiorari* might be the appropriate and ordinary course of law; but where he is acting wholly "without" his jurisdiction, the question is different. The primary object and purpose of a writ of prohibition is to keep the inferior courts within the limits and bounds of their several jurisdictions as prescribed by the laws. 8 Bac. Abr. p. 206, tit. "Prohibition;" High, Extr. Rem., sec. 765. And the general rule is that the writ issues whenever an inferior court is attempting to exercise a jurisdiction which it does not possess, or, if it does have the jurisdiction, whenever it is exercising an unauthorized power. 5 Wait, Act. & Def., 250.

The next question for our consideration is whether the defendant, acting as a United States commissioner, had jurisdiction to punish for this alleged contempt. It is contended that the commissioner had the same power in the matter as a justice of the peace would have had, and that a justice of the peace had full power to punish for such contempt. A justice of the peace has no inherent power to commit for contempt. *Queen* v. *Lefroy,* 4 Moak, Eng. R., 134; *Rhinehart* v. *Lance,* 43 N. J. Law, 311, 39 Am. Rep., 59; *Storey* v. *People,* 79 Ill., 45, 22 Am. Rep. 158. And it is doubtful whether at common law, justices of the peace were accorded power to punish contempts, ex-

cept perhaps where they were committed *in facie curiæ*.
Rap. Contempt, sec. 6, note 2. In superior courts the
power to punish contempts is inherent and necessary, in-
dependent of statutory authority, and such courts may go
beyond the power given by statute in order to preserve
and enforce constitutional powers when acts in contempt
invade them. Id., sec. 1. Although a justice of the
peace has no inherent right to commit for contempt, he
has the inherent right to remove disorderly persons from
his presence. Such a power the commissioner undoubt-
edly has; it is essential to the very existence of the court,
and is implied in its creation; but a power to commit is not
a necessary incident, and is not granted by implication.
A justice of the peace or a commissioner has power not
only to remove the party committing the contempt, but
has the power also, in a proper case, to require the party
to give bail for his appearance to answer to a criminal
charge, if acts of a criminal nature take place, and, if he
cannot find bail, to commit him in default of bail. A jus-
tice of the peace or commissioner, therefore, has not the
power by implication to punish such contempt, but if he
has it at all, it must be given him by statute. Although
a justice may not have any inherent power to punish for
contempt, and none was accorded by the common law, ex-
cept when the contempt was in the presence of the jus-
tice while acting officially, yet it is contended that by our
statutes justices have the power, and that their powers ex-
tend to such a case as the one before us. The territorial
enactments for the punishments of contempts by justices
of the peace specify five different classes or subdivisions
of contempts punishable by justices. Laws, 1884, pp. 151
299. The first and second subdivisions seem to refer to
contempts committed in the immediate presence of the
justice while acting officially, or in the immediate vicinity,
and tending to interrupt the proceedings before him. Sub-
divisions 3 and 4 have reference to disobedience of orders
or process, and the fifth subdivision has reference solely
to the rescuing of any person or property held under or-
der or process of such justice's court. There is in none
of these subdivisions any sort of authority given to a jus-

tice to commit or punish for a contempt out of the presence or immediate vicinity of the justice, except where there is disobedience or resistance to some order or process of the court, or where there is a rescue of some person or property. The case before us does not present one coming under either of the five subdivisions. The alleged contempt matter was a publication in a newspaper, and the circulation thereof. From the argument of counsel it would seem that reliance is placed mainly, if not wholly, upon the first subdivision above stated. That subdivision sets forth as the things that can be punished by a justice of the peace as contempts, the following:

"Disorderly, contemptuous, or insolent behavior toward the justice while holding court, tending to interrupt the due course of the trial or other judicial proceeding." This "behavior" must be "toward the justice" and it must be toward him "while holding court." The jurisdiction of the justice, as we have seen, cannot be implied; and the rule being that he has no inherent or common law jurisdiction to punish contempts, except when in his presence, it follows that the statute must provide in express terms that he could punish for acts committed out of his presence, or he cannot have such power. But this statute, in none of the subdivisions aforesaid, so provides. It follows that he does not have the power.

It is urged that the commissioner had the same jurisdiction as the commissioners of the circuit and district courts of the United States, and that such latter commissioners have the power to punish such contempts, hence the former have the power also. We are referred to no authorities showing that commissioners of the circuit and district courts of the United States have jurisdiction to punish contempts of this character committed out of their immediate presence. Such circuit and district courts have not, since 1831, had any such power, except, of course, in the enforcement of some order, judgment, or process. Rev. St. U. S., p. 137, sec. 725. They have no power to punish contempts committed by publications in newspapers; and we do not see how they could, except by an express act of Congress, grant to their commissioners greater power than

they themselves had.   The granting of such power to any court is one of extraordinary character, and is only granted to courts of general jurisdiction.   And then it is to be exercised with great caution and prudence, and only in cases of urgent necessity.   The tendency of the present day is to narrow, rather than enlarge, the limits for the exercise of such summary power.   And it is not the policy of the law to grant such extraordinary powers to inferior courts. It is deemed that such courts, and in a measure the superior courts, are well protected by the criminal statutes, whereby the party alleged to be in contempt for making libelous publications is subject to indictment and punishment.   Comp. Laws, pp. 593, 594, secs. 1954–1963.

We think that the commissioner is in this matter acting outside of his jurisdiction, and that the writ of prohibition would be the proper remedy.   The demurrer is overruled, and, as the case made by the answer would not change the result, the alternative writ is made absolute.

ZANE, C. J., and HENDERSON, J., concurred.