[Filed May 1, 1890.]

*STATE OF OREGON *v.* E. J. KAISER.

CONTEMPT OF COURT—WHAT ACTS CONSTITUTE—DEFINED BY LAW.—Acts and omissions deemed to be contempts of the authority of courts under the laws of Oregon are only those which are specified as such under the subdivisions of section 650 of the Civil Code, and in other sections thereof, and can be punished only in the mode therein prescribed.

CONTEMPT—PUBLICATION IN A NEWSPAPER—WHEN NOT.—The publication of an article in a newspaper is not a contempt unless it reflect upon the conduct of the court in reference to a pending suit or proceeding, and tend in some manner to influence its decisions therein, or to impede, interrupt or embarrass the proceedings of the court in reference thereto.

CONTEMPT—POWER OF THE COURT TO PUNISH—AFFIDAVIT WHEN NECESSARY.—A court has no authority to proceed against a party for contempt on account of acts not committed in the immediate view and presence of the court, unless the facts constituting the contempt are shown by an affidavit presented to the court.

Jackson county: L. R. WEBSTER, Judge.

Defendant appeals. Reversed.

Said circuit court, at a term thereof held on the 13th day

---

*Omitted from previous volume by mistake.—[REPORTER.

of December, 1889, proceeded of its own motion to make and enter the following order:

"In the circuit court for Jackson county, Oregon.

"Whereas you, E. J. Kaiser and N. A. Jacobs, as editors and publishers of the Valley Record, a newspaper published at the city of Ashland, Jackson county, Oregon, on Thursday, the 12th of December, 1889, in an issue of said Valley Record published on said day, did publish of and concerning the above court, and the judge and officer thereof, the following, to-wit:

"'The circuit judge has ordered an investigation into the whys and wherefores of a material witness disappearing in a criminal case, in which his important testimony was needed to convict. While the honorable court is at the investigation business, it might not be more than common justice to go into the wholesale business of investigating itself and everybody else connected with the management and manipulation of the jurisprudence of Southern Oregon. If some of the methods employed could be sifted to the bottom, a system of debauchery would be unearthed that may be very warm and interesting to some of the executors. In fact, then, the evidence would be laid bare to the people of Southern Oregon, and they would know just why one man can be convicted of murder in the first degree, and "hung by the neck until he is dead," on strong circumstantial evidence; and why another crime, of the same foul magnitude, is committed, and the courts fail to find the author when the circumstantial evidence that made the first man stretch hemp was far less convicting in its circumstantialness than was the case that the blind Goddess of Justice could not find guilty; why attorneys can offer bribes to even such august personages as grand jurors to bring in suitable verdicts; and why—yes, why—a lot of other things, just as queer, irregular, and delicate, and too numerous to mention, are occurring as periodically as there are exigencies that make them. In fact the court would have an all-year's job on its hands. The practicing condition of jurisprudence in

this section of the world is as corrupt and criminal in its methods, in proportion to population, amount and magnitude of crime, and purse of criminals, as it is in the cities where these cases are regularly "handled" by the political boss who "makes" the officials, "fixes" the juries, and attends to the case, for a large sum. These irregular methods are becoming so numerous that it seems as though they have encysted themselves upon and are a part of the—unwritten —works of Blackstone. This is one of the conditions and dangerous consequences of the political methods in vogue in Jackson county, an immediate result of which is shown in the shameless way in which its representative officials are allowed to sell out their constituency for a beggarly fee. Another direct result of this condition of affairs has placed an indebtedness of from $100,000 to $150,000—such a magnitude that no one does know the actual amount—over the county, that is bearing practically ten per cent interest (mighty large returns and safe investment for big capital); and no effort is being made to stop it from climbing right along up. When will the cupidity, indifference and lack of courage of the people in public affairs cease, and an effort made to at least put a check to these grasping vultures?'

"It is, therefore, now hereby ordered that you, and each of you, be and appear before said court, at the court house in Jacksonville, said county and state, on Monday, 16th December, 1889, at 9 o'clock in the forenoon, then and there to show cause, if any you have, why you should not be punished for contempt of said court for having so published and circulated the matter above set out as aforesaid. Done in open court on Friday, 13th December, 1889.

"LIONEL R. WEBSTER."

A certified copy of the order and citation having been personally served upon the said E. J. Kaiser on the 17th day of December, 1889, he appeared in accordance with the requirements thereof, and filed an answer duly verified by him, of which the following is a copy:

"E. J. Kaiser comes, and, in answer to a citation issued

out of the above-entitled court, and heretofore served on him, says he is engaged in publishing a newspaper of general circulation at Ashland, Or.; that, in publishing said article that appears in said citation, he did not make any reference to any action or proceeding then pending in said court, or before any grand jury, nor was there any grand jury in session at said time, as defendant is informed; that said article was, so far as the same relates to the courts of this county, a criticism of past acts therein, and the same was not intended to have, and would not have, any tendency to interfere with the proper and unbiased administration of the law in any case or cases then or now pending in said court; and that said article was published only, as defendant believed, in the interest of society, and defendant earnestly disclaims any intentional disrespect towards said court, or the officers thereof, in the publishing of said article. And further answering, defendant avers that said court has no jurisdiction of the person of this defendant under this proceeding, and denies that this court has any jurisdiction to punish this defendant, or to adjudge him in contempt, for the publishing of said article set forth in said citation."

The said circuit court, upon the said order, citation and answer, adjudged the said Kaiser guilty of contempt of the court in the publication of said article, and sentenced him to pay a fine of $50, and also that he be imprisoned in the county jail for fifteen days, from which adjudication the said Kaiser brought this appeal.

*H. K. Hanna,* for Appellant.

*W. M. Colvig,* district attorney, and *A. S. Hammond,* for Respondent.

THAYER, C. J.—Two questions are presented for our consideration upon this appeal: *First,* whether the matter published by the appellant was punishable as a contempt of the circuit court; *second,* whether said court had authority of its own motion to cite the appellant to appear before it and inflict punishment upon him for the alleged offense.

The Civil Code of this state, section 650, prescribes what

acts and omissions in respect to a court of justice or proceedings therein, shall be deemed to be contempts of the authority of the court. They are as follows: Disorderly, contemptuous, or insolent behavior towards the judge while holding the court, tending to impair its authority or to interrupt the due course of a trial or other judicial proceeding; a breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the due course of a trial or other judicial proceeding; misbehavior in office, or other willful neglect or violation of duty, by an attorney, clerk, sheriff, or other person appointed or selected to perform a judicial or ministerial service; deceit or abuse of the process or proceedings of the court by a party to an action, suit, or special proceeding; disobedience of any lawful judgment, decree, order, or process of the court; assuming to be an attorney or other officer of the court, and acting as such without authority in a particular instance; rescuing any person or property in the custody of an officer by virtue of an order or process of such court; unlawfully detaining a witness or party to an action, suit, or proceeding while going to, remaining at, or returning from the court where the same is for trial; any other unlawful interference with the process or proceedings of a court; disobedience of a subpœna duly served, or refusing to be sworn or answer as a witness; when summoned as a juror in a court, improperly conversing with a party to an action, suit, or other proceeding to be tried at such court, or with any other person, in relation to the merits of such action, suit, or proceeding, or receiving a communication from a party or other person in respect to it without immediately disclosing the same to the court; disobedience by an inferior tribunal, magistrate, or officer of the lawful judgment, decree, order, or process of a superior court, or proceeding in an action, suit, or proceeding, contrary to law, after such action, suit, or proceeding shall have been removed from the jurisdiction of such inferior tribunal, magistrate, or officer.

There are various other acts in the Code which are

specially declared punishable as contempt; and it authorizes every court of justice and every judicial officer to punish contempt by fine or imprisonment, or both, but provides that such fine shall not exceed $300, nor the imprisonment six months, and that, when the contempt is not one of those mentioned in subdivisions 1 and 2 of section 650, or subdivision 1 of section 916, which empowers every judicial officer to preserve and enforce order in his immediate presence, etc., it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby before the contempt can be punished otherwise than by a fine not exceeding $100. (Section 651.) Section 652 of the Code provides that "when a contempt is committed in the immediate view and presence of the court or officer, it may be punished summarily, for which an order must be made, reciting the facts as occurring in such immediate view and presence, determining that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed"; and section 653 provides that "in cases other than those mentioned in section 652 [642], before any proceedings can be taken therein the facts constituting the contempt must be shown by an affidavit presented to the court or judicial officer, and thereupon such court or officer may either make an order upon the person charged to show cause why he should not be arrested to answer, or issue a warrant of arrest to bring such person to answer in the first instance." Section 655 provides that "in the proceeding for a contempt the state is the plaintiff. In all cases of public interest the proceeding may be prosecuted by the district attorney on behalf of the state; and in all cases where the proceeding is commenced upon the relation of a private party, such party shall be deemed a co-plaintiff with the state."

These various sections of the Code not only provide what acts shall be deemed contempts, and point out the mode of procedure for their punishment, but strongly indicate that when the act constituting the contempt is not committed in the immediate view and presence of the court or officer, it

must be such an one as is calculated to affect the right or remedy of a party in a litigation. Section 651, which limits the punishment to a fine not exceeding $100, unless it appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced by the contempt, clearly shows this. If this view be correct, it follows then that unless the matter published by the appellant constituted a contempt under subdivisions 1 or 2 of said section 650, or under subdivision 1 of section 916, or affected or tended to affect the right of a party to a litigation pending in said court, or before the judge thereof, it does not come within the purview of the Code. But counsel for the respondent urge that a court of justice has power to punish for contempt, and that its power in that respect cannot be limited by statute. This is undoubtedly true so far as it is necessary to maintain order in the conduct of its business and in the enforcement of its jurisdiction. The legislature could as well abolish the courts outright as to deprive them of the power to punish for contempt those who impeded, obstructed and embarrassed the administration of the law. It would paralyze their functions, and render their process, orders, decrees and judgments mere *brutum fulmen*. But whether they possess inherent authority to punish as contempt acts which do not affect causes actually pending before them, although the acts tend to degrade the court and bring the administration of justice into disrepute, has never been conceded in this country. Counsel for respondent have cited in support of that doctrine from the American Decisions, *State* v. *Morrill*, 16 Ark. 384, and *Stuart* v. *People*, 4 Ill. 405; but it is well understood that the courts of the latter state have since held quite to the contrary. (*Storey* v. *People*, 79 Ill. 45, 22 Am. Rep. 158.)

In *State* v. *Anderson*, 40 Iowa, 207, the supreme court of that state held that the publication by an attorney of an article in a newspaper criticising the rulings of a court in a cause tried and determined prior to the publication, did not constitute contempt punishable by the court, and referred

approvingly to *Dunham* v. *State*, 6 Iowa, 245, in which it was held that the publication of articles in a newspaper reflecting upon the conduct of a judge in relation to a cause pending in court, which had been disposed of before the publication, however unjust and libelous the publication might be, did not amount to contemptuous or violent behavior toward the court, under chapter 94, Code 1851, of that state, nor that such articles were so calculated to impede, embarrass or obstruct the court in the administration of the law as to justify the summary punishment of the offender under that chapter. The inherent power of a court of justice to punish parties for contempt who commit acts which have a direct tendency to obstruct or embarrass its proceedings in matters pending before it, or to influence decisions regarding such matters, is undoubted; but it can hardly be maintained, from the adjudications had upon the subject in the various states, that such power is broad enough to vest in the court the authority to so punish any one for criticising the court on account of its procedure in matters which have fully terminated, however much its dignity and standing may be affected thereby, however unjust, rude or boorish may be the criticism, or whatever may be its effect in bringing the administration of the law into disrepute. In any event, it seems to me that the legislature has authority to limit the power of courts in regard to matters of contempt to the punishment only of such acts as are specified in the sections of the Code above set out.

Nor can I discover any reason why the legislature does not possess authority to prescribe the mode of procedure to be observed by the courts in the exercise of their powers to punish in such cases. The proceeding is not a personal matter of the court. The state is a plaintiff in all cases of that character. But when the acts constituting the contempt are committed in the presence of the court, it may take judicial cognizance of them and inflict summary punishment. It is, however, required to make an order reciting the acts as occurring in its immediate view and presence,

and determine that the person proceeded against is thereby guilty of a contempt, and that he be punished, etc.   As I view the said sections of the Code, they are little more than declaratory of the law upon the subject of contempt as understood by a large proportion of the courts of the several states at the time of their adoption.  They provide every means necessary to the preservation of order and decorum in the presence of the courts of the state, while engaged in the transaction of their business, for the enforcement of obedience to their lawful judgments, decrees, orders, and processes, and for the performance of official duty upon the part of their officers.   Whether, therefore, the said matter published by the appellant constituted a contempt depends upon whether it falls within any of the cases specified in said sections; and whether the circuit court had authority of its own motion to cite the appellant to appear before it and inflict upon him the punishment imposed, depends upon whether the offending was done in the immediate view and presence of the court.

For what purpose or with what intent the appellant published the said matter, unless it were to create an idle, silly sensation, is an enigma.  His doing so probably resulted from a freak or spleen.   He certainly could not have expected to gain any advantage from such a profusion of extravagancy, nor have supposed that a half-witted person, even, would give any credence to his grotesque account of the affairs of Jackson county referred to in his production. Why any man other than an addle-brained lunatic should print such absurd, ridiculous stuff in a newspaper, is difficult to imagine.   The indulgence in such shilly-shally by managers of newspapers indicate a mania on their part to abuse, vilify and insult officials selected to administer the affairs of government, however devoted and faithful to the public interests those officials may be.  Such a course only tends to incite anarchy, the most dangerous and dreaded enemy with which a republican government has to contend.   It is well known to this court and to the community generally, that no such condition in the judicial mat-

ters of "Southern Oregon" as the appellant endeavored to represent exists, and that no such abuses as he depicted prevailed there; but, upon the contrary, that justice is as well and faithfully administered in that locality as in any other part of the state. Yet the appellant, the editor of the newspaper, whose desire should not only be to have upright and competent officials in the administration of the local affairs of his section, but where he consistently can, take pride in having them so regarded by the community and the world at large, makes use of his position o traduce and degrade them. Instead of attending to his business of imparting useful information,—instead of assisting in building up the community and its institutions,—he acts the part of an iconoclast. The course pursued by such persons is a positive damage and injury to society. It is a poor requital for the faithful services of the learned judge who presides in the first judicial district, and whom the people thereof selected to determine the law in their matters of difference, to subject him to a wholesale charge of dereliction of duty, coming from whatever source it may.

The publication, according to the general definition given by Blackstone, and by some of the more modern law-writers upon the subject, would probably constitute contempt, but under the Code of this state, it does not; nor do I think it would according to the weight of decisions made under the constitutions of the various states. If it had reflected upon the conduct of the court with reference to a pending suit, and tended in any manner to influence its decision therein, it would, unquestionably, have been a contempt; but it was not shown that any suit was then pending by which the rights of any litigant were or could have been affected by it. The article itself states that the court had ordered an investigation into the "whys and wherefores" of a material witness disappearing in a criminal case, in which his testimony was needed to convict; but it does not appear in the proceeding for contempt that such was the fact, nor, as I can see, that it was calculated to influence the decision in

that matter.  It appears to have been a vague, wanton fault-finding in regard to the general manner in which official duty in that part of the state had been performed, not arising to the dignity of a criticism, nor entitled to any notice whatever.  If the publishers of such contemptible articles are left alone to breathe and scent their own fetid exhalations, it will be the most suitable punishment which can be inflicted upon them.  If the act were such an one as could have been in the immediate view and presence of the court, it would, doubtless, have been what is termed a "direct contempt"; but, it not having been so committed, and not involving a direct disobedience to any order of the court, it comes within the class denominated "constructive contempts."  (20 Amer. Law Reg. 147.)  In proceedings to punish that class of contempts, it is necessary that a proper information should be filed before the court is authorized to act in the matter.  Said section 653 of the Code, above set out, makes it imperative that the facts constituting the contempt in such cases must be shown by an affidavit presented to the court, etc., before the proceeding can be taken.  "The power of a court," said Wallace, J., in *Batchelder* v. *Moore*, 42 Cal. 414, "to punish for an alleged contempt of its authority, though undoubted, is in its nature arbitrary, and its exercise is not to be upheld except under the circumstances and in the manner prescribed by law."  I am of the opinion, therefore, that the court was not authorized to proceed in the matter of its own motion; nor was the court empowered to punish the appellant by imprisonment.  Section 651 of the Code, above referred to, is decisive upon that point.

The decision appealed from must therefore be reversed.