## STATTER v. UNITED STATES.

No. 6899.

Circuit Court of Appeals, Ninth Circuit.

Aug. 21, 1933.

Frank H. Foster, of Juneau, Alaska, and Harold M. Sawyer, Alfred T. Cluff, and D. W. Evans, all of San Francisco, Cal., for appellant.

Howard D. Stabler, U. S. Atty., of Juneau, Alaska.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

SAWTELLE, Circuit Judge.

On June 6, 1932, Justin W. Harding, Judge of the United States District Court for the District of Alaska, First Division, sent the following letter to the United States Marshal for that division of the district regarding expenditures from "Fund C," for incidental expenses of the court:

"Dear Sir: With reference to expenditures of all kinds made from Fund 'C.'

"Hereafter, all expenditures of all kinds and in any amounts will have to be authorized and this includes emergency expenditures for the Gas Boat 'Helmar', whether in Juneau or outside of Juneau. Gas and oil can be obtained for the Gas Boat 'Helmar' by obtaining previous authorization for gas in the amount of 300 gallons and oil in the amount of 20 gallons. When this is about exhausted new authority can be obtained.

"It is the intent and purpose of this letter that no expenditures from Fund 'C' will be allowed unless previous authority has been obtained.

"Requests for authorization of expenditures will be transmitted thru the Clerk's office.

This letter supersedes all previous communications on this subject and cancels all communications inconsistent herewith."

On the following day, appellant, who was at that time Chief Deputy United States Marshal for the division, addressed to the judge a letter replying to the instructions set forth above. That letter contained disrespectful language, and fell short of the deference and decorum to be shown by an officer of the court when addressing the judge thereof. Because of the improper tone of the letter, as well as because, under our theory of the case, its text is immaterial, we are not dignifying it by setting it forth herein.

On June 28, 1932, the United States Attorney for the division filed an affidavit for contempt against the appellant, setting forth the texts of the letters written by the judge

and by the appellant; reciting that the judge is charged and authorized by law (Act of March 3, 1909, 35 Stat. 840, Comp. Laws Alaska § 367 [48 USCA § 106]) with the duty "of allowing and directing the application of certain funds, designated by the Attorney General of the United States for accounting purposes as Fund C, to the incidental expenses of" the court "on written orders, duly made and signed by" the judge; and charging that the appellant was in contempt of court under subsections 3 and 9 of section 1441 of the Compiled Laws of Alaska.

The affidavit for contempt also alleged that the appellant displayed the letter written by him to the judge, "to various persons, in particular to George W. Folts, Assistant United States Attorney, and to J. W. Leivers, deputy clerk of said court, with the malicious intent and purpose on the part of said Joseph F. Statter of bringing the said judge of said court and the said court, into ridicule and disrepute."

On July 6, 1932, the appellant personally appeared with his attorney before the District Court, in obedience to an order to show cause why he should not be adjudged in contempt of court as charged in the affidavit.

The appellant made an oral statement, moved to quash the affidavit for contempt and the order, filed a written answer, and made demand for a trial by jury.

In his answer, the appellant admitted "making of the publication or letter set forth in said affidavit," but denied "that the statements therein contained" constituted a cause of contempt. He further denied "that he did wilfully and contemptuously misbehave in his office as chief deputy United States Marshal towards the Judge of said court, and towards said court," and denied "that he did wilfully and unlawfully and contemptuously interfere with the proceedings of said court, in the discharge of said court's duty and functions of allowing and directing the application of Fund C."

The appellant's answer closed with the following paragraph: "If the language used by the defendant in said letter, set forth in the affidavit for contempt, was such as to seem intemperate or discourteous to the Judge of this court, defendant makes public apology for any discourtesy to the Judge in his private capacity, and disavows any intent to interfere in any way with the administration of justice."

The court overruled the motion to quash, denied the application for a jury trial, adjudged the appellant in contempt, and imposed a fine of $100 or a sentence of one day in jail for each $2 of the fine.

From the judgment the present appeal was taken, a supersedeas bond being allowed and furnished.

The duties and powers of the District Judge with reference to allowing or approving expenditures by the clerk from moneys derived from fees, for incidental expenses, are set forth in section 367 of the Compiled Laws of Alaska, 1913 (48 USCA §§ 106 and 107): "* * * He [each of the four clerks of the court] shall also collect and receive all moneys arising from the fees of his office, from licenses, fines, forfeitures, judgments, or on any other account authorized by law to be paid to or collected by him, and shall apply the same, except the money derived from licenses, to the incidental expenses of the proper division of the district court and the allowance thereof as directed in written orders, duly made and signed by the judge, and shall account for the same in detail, and for any balances on account thereof, under oath, quarterly, or more frequently if required, to the court, the Attorney General, and the Secretary of the Treasury. * * * And after all payments ordered by the judge shall have been made, any balances remaining in the hands of the clerk shall be by him deposited to the credit of the United States. * * *"

In paragraph 1303 of the Attorney General's Instructions to United States Judges, Marshals, Attorneys, Clerks, etc., for the District of Alaska, there is to be found an interpretation of the foregoing statutory provision, in so far as it relates to fund C: "Public moneys are, therefore, for the purpose of accounting divided into four classes according to their several purposes and general dispositions, and are distinguished by the following captions, viz.: * * * (c) Funds other than license moneys, available for court expenses."

Subsections 3 and 9 of section 1441 of the Compiled Laws of Alaska, upon which the affidavit for contempt is based, are as follows:

"Sec. 1441. The following acts or omissions, in respect to a court of justice or proceedings therein are deemed to be contempts of the authority of the court:

"Third. Misbehavior in office or other willful neglect or violation of duty by an attorney, clerk, marshal, or other person appointed or selected to perform a judicial or ministerial service.

"Ninth. Any other unlawful interference with the process or proceedings of the court."

It is elementary that criticism of a judge's ministerial acts does not give rise to an action for contempt. In 13 Corpus Juris 38, § 46, the rule is thus stated: *"Relating to Ministerial Acts of Judge.* Libelous publications concerning the conduct of a judge in the performance of a ministerial duty do not constitute contempt."

The appellant earnestly contends that "the judge acted in a purely ministerial capacity, and that no valid action for contempt could lie for criticisms of his actions in that regard." The appellant also argues that section 367, supra, "does not call for the exercise of any judicial function by the various judges of the Territory; they act as disbursing officers with regard to the miscellaneous expenses of the court, and as the statute further provides, the report of their expenditures is sent to the Treasurer of the United States for audit."

According to the weight of authority, the legal definition of a ministerial act is an act that is mandatory upon an officer under given circumstances, and calls for the exercise of no judgment or discretion on the part of such officer.

In any event, that is the definition which has been adopted by the Supreme Court of the United States, from the days of Chief Justice Taney to the present time.

See, Kendall v. United States, 12 Pet. (37 U. S.) 522, 613, 9 L. Ed. 1181; State of Mississippi v. Johnson, 4 Wall. (71 U. S.) 475, 498, 499, 18 L. Ed. 437; Ness v. Fisher, 223 U. S. 683, 692, 32 S. Ct. 356, 56 L. Ed. 610.

It is unnecessary, however, to labor this point further; for another defense urged by the appellant is, in our opinion, determinative of the case.

The appellant argues that the criticism of the District Judge in the instant case did not "relate to any pending case, or matter before the court."

Some courts have held that in contempts alleged to have been committed outside of the presence of the court, the objectionable "publication must relate to * * * a judicial decision, order, or proceeding in a cause pending or completed." Hamma v. People, 42 Colo. 401, 94 P. 326, 327, 15 L. R. A. (N. S.) 621, 15 Ann. Cas. 655.

According to a note to Burdett v. Commonwealth, 103 Va. 838, 48 S. E. 878, 106 Am. St. Rep. 916, published in 68 L. R. A. 251, 255, "the weight of authority, however, is clearly to the effect that comment upon concluded cases is unrestricted under our constitutional guaranty of the liberty of the press." See, also, Van Dyke v. Superior Court, 24 Ariz. 508, 211 P. 576, 580, 581; In re Cottingham, 66 Colo. 335, 182 P. 2, 3; 6 R. C. L., § 25, pp. 512, 513.

Be that as it may, there is scarcely any disagreement among the authorities that there must be some judicial proceeding, either pending or completed, with reference to which the asserted contempt is committed out of the presence of the court.

As to this question, the decisions of the California and Oregon Supreme Courts are particularly persuasive and illuminating, for the reason that the contempt statutes in those jurisdictions are identical, in all pertinent and material respects, with those of Alaska. See, United States v. Pratt, 3 Alaska, 400, 418, 419. We will therefore advert for a moment to California and Oregon cases.

Referring to subsection 3 of section 1209 of the Code of Civil Procedure of California, which, at the time the decision was rendered, was, as will be seen, almost identical with subsection 3 of section 1441 of the Alaska Code, supra, in Hutton v. Superior Court, etc., 147 Cal. 156, 81 P. 409, 411, the Supreme Court of California said: "It was alleged in the affidavit of Jean Pon that the petitioner was, at the time of the commission of the alleged acts, a police commissioner of the city and county of San Francisco, and the superior court found that, by reason of directing the arrest of Mary Duran under the circumstances set forth in such affidavit, he was, in addition to being guilty of contempt because of disobedience of a lawful judgment, etc., guilty of misbehavior in office, constituting a contempt of court, under the provisions of subdivision 3, § 1209, of the Code of Civil Procedure. That section, in specifying what acts or omissions 'in respect to a court of justice or proceedings therein' are contempts 'of the authority of the court,' specifies in subdivision 3 'misbehavior in office, or other willful neglect or violation of duty by an attorney, counsel, clerk, sheriff, coroner, or other person, appointed or elected to perform a judicial or ministerial service.' There being no sufficient allegation showing willful disobedience of any judgment, order, or process of the court, the subdivision quoted above has no application to the facts of this case. It is not every misbehavior in office by any of the officers specified therein that constitutes a contempt of the authority of a court. The mis-

behavior by such an officer, to constitute a contempt of the court, must be 'in respect to' such court or some proceeding therein. Eliminating the element of disobedience to the judgment, the alleged misbehavior was, at most, simply the malicious taking part in an arrest that was unauthorized by the facts. This would not be a contempt of the authority of any court."

In State of Oregon v. Kaiser, 20 Or. 50, 56, 57, 59, 23 P. 964, 967, 8 L. R. A. 584, the court said:

"But whether they [the courts] possess inherent authority to punish as contempt acts which do not affect causes actually pending before them, although the acts tend to degrade the court, and bring the administration of justice into disrepute, has never been conceded in this country. * * *

"The inherent power of a court of justice to punish for contempt one who commits acts which have a direct tendency to obstruct or embarrass its proceedings in matters pending before it, or to influence decisions regarding such matters, is undoubted; but it can hardly be maintained, from the adjudications had upon the subject in the various states, that such power is broad enough to vest in the court the authority to so punish any one for criticising the court on account of its procedure in matters which have fully terminated, however much its dignity and standing may be affected thereby, however unjust, rude, or boorish may be the criticism, or whatever may be its effect in bringing the administration of the law into disrepute. In any event, it seems to me that the legislature has authority to limit the power of courts in regard to matters of contempt to the punishment only of such acts as are specified in the sections of the Code above set out. * * *

"The publication, according to the general definition given by Blackstone, and by some of the more modern law-writers upon the subject, would probably constitute contempt, but under the Code of this state, it does not; nor do I think it would according to the weight of decisions made under the constitutions of the various states. If it had reflected upon the conduct of the court with reference to a pending suit, and tended in any manner to influence its decision therein, it would, unquestionably, have been a contempt; but it was not shown that any suit was then pending by which the rights of any litigant were, or could have been, affected by it."

In Francis v. People (C. C. A. 3) 11 F. (2d) 860, 865, certiorari denied, 273 U. S. 693, 47 S. Ct. 91, 71 L. Ed. 843, the court observed: "Coming to the courts, the law also distinguishes between attacks on the *judge* and on the *tribunal itself*. The former may be libelous and, when so, the remedy is by civil action; the latter is contempt according to its purpose and effect, and, when so, the offender is open to punishment. In our jurisprudence the extraordinary action of contempt of court does not lie to heal the wounded sensibilities of a judge; it may be invoked only when the offending act impedes or disturbs the administration of justice." (Italics our own.)

We advance, finally, to what we conceive the determinative question in the instant case; namely, Was there a judicial "process" or "proceeding," either completed or pending, with respect to which the alleged contempt was committed? It may be noted in passing, that subsections 3 and 9, supra, deal with "acts or omissions in respect to a court of justice or proceedings therein," and not "in respect to a judge," except, of course, in so far as he represents the court. See the Francis Case, supra.

It may be conceded at the outset that a few courts have construed the term "proceeding" to include almost any act performed by a court, however ministerial it might be. But particularly in dealing with the quasi criminal, "extraordinary action of contempt," we do not feel justified in accepting the minority, strained, and even fanciful, conception of the term.

In our view, the proper definition of "proceeding" is to be found in the first quotation under the word in 6 Words and Phrases, First Series, page 5632: " 'In its general acceptation, "proceeding" means the form in which actions are to be brought and defended, the manner of intervening in suits, of conducting them, the mode of deciding them, of opposing judgments and of executing. Ordinary proceedings intend the regular and usual mode of carrying on a suit by due course of common law.' Erwin v. United States [D. C.] 37 F. 470, 488, 2 L. R. A. 229 (citing Bouv. Law Dict.)."

Again, in the same work, Second Series, Volume 3, at page 1234, we find the following: " 'Proceedings' is defined to mean all the steps or measures adopted in the prosecution or defense of an action. State ex rel. West v. McCafferty, 25 Okl. 2, 105 P. 992, 996 [L. R. A. 1915A, 639]. See, also, State

ex rel. Nissler v. Donlan, 32 Mont. 256, 80 P. 244, 247."

The Supreme Court of the United States has held that a preliminary examination before a commissioner was not a "proceeding" or a "case pending" in the court which appointed him, or in any court of the United States. Todd v. United States, 158 U. S. 278, 283, 284, 15 S. Ct. 889, 39 L. Ed. 982.

A fortiori, the mere approval by a judge, of an account relating to court expenditures, not involving any specific litigation, either past or pending, cannot be deemed a proceeding within the intendment of the Alaska statute.

For this reason, we hold that the affidavit did not charge an act that was punishable as contempt.

Accordingly, the judgment is reversed, and the proceeding is ordered dismissed.