Percival v. State.

WASHINGTON D. PERCIVAL V. STATE OF NEBRASKA.

FILED SEPTEMBER 17, 1895.    No. 6872.

1. Contempt: COURTS: PUBLICATION REGARDING A PENDING CAUSE. A publication regarding a cause during its pendency in court, which tends to corrupt or embarrass the administration of justice and to produce a prejudice in the minds of the public with respect to the merits of the cause, is a contempt and punishable.

2. ———: ———: ———: CONCLUSIVENESS OF ANSWER. Where, in a proceeding for an indirect or constructive contempt, consisting of the publication in a newspaper, the article upon which the complaint is based is indefinite in its meaning and application, and is not libelous *per se*, and does not, unless aided by an innuendo, apply to the court, nor reflect upon its integrity or purpose, and, in so far as any reflection upon the court is concerned, is capable of an innocent interpretation; and the defendant, in an answer sworn to by him, positively asserts that he used the language employed in the article in a meaning other than libelous, and with no intent to reflect upon either the integrity or honesty of purpose of the judge, or to embarrass or impede the administration of justice, such answer will be taken as conclusive.

ERROR to the district court for Douglas county. Tried below before SCOTT, J.

The opinion contains a statement of the case.

*Edward W. Simeral* and *E. R. Duffie,* for plaintiff in error:

Comment upon past proceedings is not contempt. (*Storey*

*v. People,* 79 Ill., 45; *Cheadle v. State,* 11 N. E. Rep. [Ind.], 426; 16 Am. & Eng. Ency. Law, 495.)

The language was not *per se* libelous. (13 Am. & Eng. Ency. Law, 391.)

Constructive contempt, being a summary proceeding, the language used must apply directly to the court or judge; and if, in order to make it apply to the judge, resort must be had to innuendo and the same is denied in the answer, contempt does not lie. The answer must be taken as true. (*Fishback v. State,* 30 N. E. Rep. [Ind.], 1088; *Cheadle v. State,* 11 N. E. Rep. [Ind.], 426.)

*A. S. Churchill, Attorney General,* and *W. S. Summers, Deputy Attorney General,* for the state.

HARRISON, J.

In this case the plaintiff in error was proceeded against for contempt, resulting in his conviction and sentence. It appears that there were two trials or hearings, a judgment of conviction and sentence upon the first being set aside upon motion of plaintiff in error, and a new hearing awarded. It is stated that the affidavit or complaint,—the basis of the first trial or hearing of the proceedings,—differed from the one upon which there was a final hearing; but however this may be, the complaint which was presented here as containing the charge of which plaintiff in error was convicted is as follows:

"Comes now J. L. Kaley, county attorney in and for the county of Douglas and state of Nebraska, and in the name of the state of Nebraska gives the court to understand and be informed, who, being sworn, on his oath says that Washington D. Percival, on or about the 9th day of March, 1894, in the county aforesaid, then and there wrongfully, unlawfully, and maliciously, for the purpose and with the intent of bringing the district court in and for the county of Douglas and state of Nebraska, and then and there being presided over by Judge C. R. Scott, one

of the judges of said district court, into disrepute and ridicule and to cause the people to have a contempt for said court, and for the purpose of causing it to be believed that said court was corrupt and influenced by corrupt motives, and for the purpose of destroying the integrity, honor, and efficiency of said court in the administration of public justice, and for the purpose of vilifying and traducing said court, and to thwart the due administration of justice in said court, and with the intent willfully to obstruct the proceedings and hinder the due administration of justice in a suit then and there and therein pending before said court, to-wit, the cause of the State of Nebraska v. T. T. Jardine, and then and there being undisposed of in said court, then and there wrote and published, and caused to be published, in the Omaha *Evening Bee*, being a daily newspaper published in the city of Omaha on said 9th day of March, 1894, and of general and extensive circulation and being generally read in said city of Omaha and in the county of Douglas and fourth judicial district of the state of Nebraska, and throughout the state of Nebraska in which said court presided over by said Judge C. R. Scott, then and there being the criminal section of the said district court, and was and is one of the courts of said judicial district, of and concerning said court the following false, scandalous, contemptuous, and defamatory matter, that is to say: ' Justice Without Equality.—Sentences Adjusted to Fit the Men.—One Party to a Crime Gets a Five-Year Sentence in the Penitentiary, While Another Gets the Benefit of a Pull.   Persons who were around the criminal section of the district court yesterday afternoon witnessed a striking illustration of what it is to be possessed of a pull.   The same persons were also given an illustration of how easy it is for a man to keep out of the penitentiary if the pull is worked for all it is worth,' intending then and there and thereby wrongfully, unlawfully, and contemptuously to cause it to be be-

lieved that said court presided over by said Judge C. R. Scott was corrupt and influenced by corrupt motives."

After some preliminary pleas were filed on behalf of plaintiff in error and heard and disposed of by the court, and an affidavit in the nature of an answer, which was verified positively, was filed for the party charged, in which he denied that he wrote, or caused to be written or published, the following portion of the article quoted in the information, viz.: "Justice Without Equality.—Sentences Adjusted to Fit the Men.—One Party to a Crime Gets a Five-Year Sentence in the Penitentiary, While Another Gets the Benefit. of a Pull," but admitted that he wrote the remainder of the article set forth in the information, which was as follows: "Persons who were around the criminal section of the district court yesterday afternoon witnessed a striking illustration of what it is to be possessed of a pull. The same persons were also given an illustration of how easy it is for a man to keep out of the penitentiary if the pull is worked for all it is worth," and it does not appear, and is not shown, that plaintiff in error was the author or caused to be published any more of the article alleged in the complaint than the portion the authorship of which he admitted in his answer. We then have here a charge of not direct, but constructive contempt alleged to have been committed by the writing and publication of such admitted portion of the article. It is contended by counsel that the portion of the article written or published, or caused to be published, by the plaintiff in error, did not constitute a contempt of court. In section 669 of the Code of Civil Procedure, under the head of "Contempt," it is provided: "Every court of record shall have power to punish by fine and imprisonment, or by either, as for criminal contempt, persons guilty of * * * Fourth—Any wilful attempt to obstruct the proceedings, or hinder the due administration of justice in any suit, proceedings, or process pending before the courts."

In 2 Bishop, Criminal Law, 259, it is stated: "By the commonly accepted doctrine, any publication, whether by parties or strangers, relating to a cause in court, tending to prejudice the public as to its merits, and to corrupt or embarrass the administration of justice,—or reflecting on the tribunal or its proceedings, or on the parties, the jurors, the witnesses, or the counsel,—may be visited as a contempt." It has also been said that the power to punish for contempt "is inherent in courts of justice, necessary for self-protection and an essential auxiliary to the pure administration of the law." (*People v. Wilson*, 64 Ill., 195, 16 Am. Rep., 542.) These are general rules, and we will now turn to some which, though general, are more specifically applicable to the facts and circumstances as developed in the case at bar. The general rule is that to constitute any publication a contempt, it must have reference to a matter then pending in court and be of a character tending to the injury of pending proceedings upon it, and of the subsequent proceeding. (Rapalje, Contempt, sec. 56; 2 Bishop, Criminal Law, sec. 262; *Fishback v. State*, 30 N. E. Rep., [Ind.], 1088; *State v. Sweetland*, 54 N. W. Rep. [S. Dak.], 415.) The plaintiff in error, in his answer, denied that he used the words in the portion of the article written by him which is set forth in the complaint with intention to cast upon either the court or its officers any imputation or charge of corruption or lack of integrity, and with intent to embarrass or impede the administration of justice. "If the article is *per se* libelous, making a direct charge against the court or jury, admitting of but one fair and reasonable construction, and requiring no innuendo to apply its meaning to the court, then it would be trifling with justice to say that the publisher could admit the publication and deny that he intended the plain and unmistakable meaning which the language used conveys; but when the language used in an article is not *per se* libelous, and only becomes so and made to apply to the court by the

use of innuendoes, and if fairly susceptible of an innocent meaning so far as any reflection upon the court is concerned, and defendant answers under oath that he used it in a sense not libelous and declares he intended no imputation upon the court, either impugning the motives or integrity of the judge or to embarrass the administration of justice, his answer must be taken as conclusive." (*Cheadle v. State*, 11 N. E. Rep., 426; *Fishback v. State, supra.*) We think the above rule a correct one. The language of the portion of the article proved or admitted by the plaintiff in error to be his production (we will quote it again), "Persons who were around the criminal section of the district court yesterday afternoon witnessed a striking illustration of what it is to be possessed of a pull. The same persons were also given an illustration of how easy it is for a man to keep out of the penitentiary if the pull is worked for all it is worth," cannot be said, upon its face and without an innuendo, to apply or refer to the court proper or its officers, or to jurors or witnesses, or to one more than another, or to be libelous *per se*, or that it clearly charges, as is stated in the complaint, that the court was corrupt and influenced by corrupt motives, or to so charge with reference to any particular person or persons, or to any one more than another. It cannot be said, upon its face, to refer to any case pending at the time it was written and published or to any designated case. In its terms it deals with some past transaction or proceedings. The phrase "possessed of a pull" is, to speak strictly, without an intelligible meaning, and is, in any event, so doubtful and uncertain that it cannot be applied as imputing that the court was corrupt as is claimed in the complaint, with any greater certainty than it may be said to refer to some other person or persons or to actions or motives erroneous and improper, but not corrupt. The portion of the article admitted and proved to be the work of plaintiff in error and the proof made were insufficient to support a charge

and conviction of contempt and sentence therefor. (*State v. Sweetland, supra.*)   We desire to state that we are only herein passing upon the portion of the article admitted or proved in the present case to have been penned by the plaintiff in error, and that no other parts of the article with which this seems to have been connected have been considered, nor has the probable effect or meaning of the portion herein involved been contemplated when read in connection and as a part of the whole article.   It follows from the views herein expressed that the judgment of the district court must be

REVERSED AND PLAINTIFF IN ERROR DISCHARGED.