# CASES DETERMINED

# August Term, 1897.

---

THE STATE EX REL. THE ATTORNEY GENERAL on complaint of ASHBAUGH and another vs. THE CIRCUIT COURT FOR EAU CLAIRE COUNTY and others.

*April 9 — April 13, 1897.*

*Contempt of court: Inherent power to punish: Publication of strictures on character and past conduct of judge: Jurisdiction: Statutory contempt: Pleading: Filing affidavit of truth of charge not a fresh contempt: Prohibition.*

1. Courts of superior jurisdiction have inherent power to punish as a criminal contempt any act which tends either to obstruct the course of justice or to prejudice the trial in any action or proceeding then pending in court; and although the power may be regulated and the manner of its exercise prescribed by statute, it cannot be entirely taken away, nor can its efficiency be so impaired or abridged as to leave the court without power to compel the due respect and obedience which is essential to preserve its character as a judicial tribunal.

2. Articles published in a newspaper contained strictures upon the general character of a circuit judge, then holding court and trying jury cases, and upon his acts in former cases which had been concluded, but there was no reference to cases pending or on trial, and the articles were not circulated in or brought into the immediate presence of the court, although they were distributed among the officers of the court and persons summoned as jurors therein, and were read by them. *Held*, that the power to punish such publication as a constructive criminal contempt was not necessary to the due administration of justice, and that an attempt to

State ex rel. Attorney General vs. Circuit Court for Eau Claire County.

exercise such power was a violation of the constitutional rights of free speech and free press, and in excess of the jurisdiction of the court, especially where a judicial election was at the time impending and the judge was a candidate for re-election.

3. In a proceeding under sec. 2565, R. S. (providing for the punishment as criminal contempts, among other things, of disorderly behavior, etc., committed during the sitting of the court and "in its immediate view and presence," and the publication of false or grossly inaccurate reports or copies of its proceedings), it is essential to the jurisdiction of the court to charge in the complaint that the act was committed in its immediate view and presence, or that the report was false or grossly inaccurate, as the case may be.

4. Where proceedings to punish as a criminal contempt the publication in a newspaper of charges against a sitting judge were in excess of the jurisdiction of the court, the action of the defendants in filing affidavits, in response to an order to show cause, alleging the truth of the charges, does not constitute a fresh contempt committed in the immediate presence of the court.

5. Where an attempt to punish an alleged criminal contempt is in excess of the jurisdiction of the court, and immediate imprisonment is threatened and about to be inflicted, prohibition is the only adequate remedy.

PROHIBITION to the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Peremptory writ granted.*

This was an action of prohibition commenced by the issuance of an alternative writ out of this court on the 3d day of April, 1897, upon motion of the *Attorney General*, based upon the sworn petition or complaint of *Messrs. Ashbaugh* and *Doolittle*. The object of the action was to prohibit the further prosecution in the circuit court for Eau Claire county of certain proceedings then pending therein, wherein *Ashbaugh* and *Doolittle* were charged with having committed a criminal contempt of said court, and were threatened with immediate imprisonment therefor. Returns were in due time made to the alternative writ both by the circuit judge, Hon. *W. F. Bailey*, and by the sheriff of said county, *C. H. Henry*, and upon order of this court a supplemental return was made by the circuit judge. These returns were challenged as insuffi-

State ex rel. Attorney General vs. Circuit Court for Eau Claire County.

cient by demurrer, and upon argument the demurrer was sustained, and judgment rendered adjudging that the contempt proceedings were in excess of the jurisdiction of the court, and awarding an absolute writ of prohibition against the further prosecution of such proceedings.

The facts which appeared by the complaint and the various returns were practically undisputed, and were, in brief, as follows: In March, 1897, the circuit court for Eau Claire county was in session, engaged in the trial of cases, the Honorable *W. F. Bailey* presiding. *Judge Bailey's* term was to expire in January, 1898, and the election of his successor was to take place on the 6th day of April, 1897. *Judge Bailey* was a candidate for re-election and two other candidates, Hon. James O'Neill and F. M. Miner, Esq., were also in the field. The petitioner *Ashbaugh* was the editor and publisher of a newspaper at Eau Claire, and the petitioner *Doolittle* was a lawyer in active practice at the same city. The campaign had become somewhat heated and acrimonious by the publication of newspaper articles pro and con. Both of the petitioners were strongly opposed to the re-election of *Judge Bailey*, and on the 11th day of March *Mr. Doolittle* published in *Ashbaugh's* newspaper an article several columns in length, charging the judge with being extravagant in the management of the court, and with being partial and unfair in respect to his official conduct in the trial of causes, and with being influenced by corrupt motives. These charges all referred to proceedings and cases already heard and decided, and not to matters then pending or on trial. On the 31st day of March an editorial article appeared in the said newspaper strongly opposing *Judge Bailey's* candidacy, and summarizing the charges against him which had been made at length in the *Doolittle* article. On the 1st day of April following *Judge Bailey* made an order on his own motion requiring Messrs. H. H. Hayden and T. F. Frawley to institute contempt proceedings against *Ashbaugh* and *Doolittle* on

account of the publications. Upon the same day Messrs. Hayden and Frawley presented a sworn petition to the court setting forth the facts as to the writing and publication of the articles, and alleging that *Ashbaugh* and *Doolittle* had circulated the articles among the officers of the court and persons summoned as jurors. Upon this petition, and on the 2d day of April, an order was made reciting that "it appears to the satisfaction of the court that *H. C. Ashbaugh* and *L. A. Doolittle* have committed a criminal contempt of said court," and requiring *Ashbaugh* and *Doolittle* to appear at 3 o'clock p. m. of the same day, and show cause why they should not be punished for said alleged contempt, and providing for the service of the order at least two hours before the hearing. This order was personally served shortly after 11 o'clock a. m. At 3 o'clock p. m. *Ashbaugh* and *Doolittle* appeared in court. *Doolittle* filed an affidavit of prejudice, but the court held that no change of venue could be granted. Further time was asked for, and time was given untill 7:30 o'clock p. m., when *Ashbaugh* and *Doolittle* filed an affidavit alleging the truth of the articles, and asking further time until the 5th of April to prepare an answer. Thereupon an order was made that interrogatories be made and served, and that *Ashbaugh* and *Doolittle* appear at 10 o'clock a. m. on the 3d day of April, to which time the proceedings were adjourned. The interrogatories were made, asking whether the defendants wrote, published, and circulated the articles, and such interrogatories were served at about 9 o'clock p. m. of the same day. At 10 a. m. upon the following day (April 3) the defendants appeared, and asked further time, which was granted, until 7:30 p. m. of the same day. Upon the assembling of the court at that time, the alternative writ of prohibition from this court was produced, and served upon *Judge Bailey*. Thereupon *Judge Bailey* announced that he would not proceed further with the pending proceedings, but at once made an order adjudging both *Ashbaugh* and *Doo-*

State ex rel. Attorney General vs. Circuit Court for Eau Claire County.

*little* guilty of a new contempt in the immediate presence of the court, by reason of having filed their affidavit alleging the truth of the articles, and committing them to jail for thirty days, such imprisonment to commence at once. The commitment was placed in the hands of the sheriff at once, but was not executed by him.

Upon these facts it was adjudged that both of the alleged proceedings for contempt were in excess of the jurisdiction of the circuit court, and the writ of prohibition was made absolute.

For the relators there was a brief by *A. L. Sanborn* and *John M. Olin,* and oral argument by *Mr. Olin* and *Mr. L. A. Doolittle.* They argued, among other things, that to constitute any publication a contempt it must have reference to a matter then pending in court, and be of a character tending to the injury of pending proceedings upon it and of the subsequent proceedings. Rapalje, Contempt, § 56; *Cheadle v. State,* 110 Ind. 301; *State v. Kaiser,* 20 Oreg. 50; *Rosewater v. State,* 47 Neb. 630; *In re Dalton,* 46 Kan. 253; *In re Thompson,* id. 254; *In re Bahama Islands* (1893), App. Cas. 138; *In re Press-Post,* 3 Ohio N. P. 180, and cases cited by the court. Sec. 2565, R. S., is a limitation upon the power of the court to punish for criminal contempts, and no one can be punished for such a contempt except in those cases specifically enumerated in the statute. *Stuart v. People,* 4 Ill. 404; *Storey v. People,* 79 id. 45; *State v. Dunham,* 6 Iowa, 245; *State v. Anderson,* 40 id. 207; *People ex rel. Munsell v. Court of Oyer and Terminer,* 101 N. Y. 245; *In re Griffin,* 1 N. Y. Supp. 7. The alleged contempt, if contempt at all, is what is known as a constructive contempt, and the legislature has the right to take away entirely the right of any court to punish for such contempts. Indeed the legislature has the right to limit and regulate the power of lower courts to punish for contempt, whether constructive or direct in character. *State v. McClaugherty,* 33 W. Va. 250; Rapalje,

State ex rel. Attorney General vs. Circuit Court for Eau Claire County.

Contempt, § 10; *State v. Kaiser*, 20 Oreg. 50; *Ex parte Robinson*, 19 Wall. 505.    Prohibition is the proper remedy. *Williamstown v. Darge*, 71 Wis. 643, and cases cited; 4 Ency. of Pl. & Pr. 809, 820; *People v. O'Neil*, 47 Cal. 109, 110; *Batchelder v. Moore*, 42 id. 412; *Huerstal v. Muir*, 62 id. 479, 481; *People ex rel. Wright v. County Judge*, 27 id. 151; *State ex rel. Campbell v. St. Louis Court of Appeals*, 97 Mo. 276; *People ex rel. Yearian v. Speirs*, 4 Utah, 385; *Havemeyer v. Superior Court*, 84 Cal. 327; *State ex rel. Ellis v. Elkin*, 130 Mo. 90; *State ex rel. Long v. Keyes*, 75 Wis. 288, and cases cited by the court.

*H. H. Hayden* and *T. F. Frawley*, for the respondents, contended, *inter alia*, that *certiorari* is the proper remedy to review proceedings for a criminal contempt, where no right of appeal exists. *State v. Leftwich*, 41 Minn. 42; *In re Fanning*, 40 id. 4; *Taylor v. Connolly*, 65 Cal. 28, 33; 4 Ency. of Pl. & Pr. 8; 2 Spelling, Extr. Relief, 1590.    The legislature cannot limit the right of courts of record, or take from them their inherent power, to punish summarily constructive contempts, when the exercise of such right is essential to the administration of justice. *Hughes v. People*, 5 Colo. 436; *In re Wolley*, 11 Bush, 95; *People v. Wilson*, 64 Ill. 195; *State v. Frew*, 49 Am. Rep. 257; *In re Pierce*, 44 Wis. 441.    The general rule is that where a publication in a newspaper being read by jurors and attendants in court would have a tendency to interfere with the proper and unbiased administration of the law, it may be adjudged a contempt and punished accordingly. *State ex rel. Phelps v. Judge of Civ. Dist. Ct.* 45 La. Ann. 1250; *Territory v. Murray*, 7 Mont. 251.

The decision was announced April 13, 1897, and the following opinion was filed September 21, 1897:

WINSLOW, J.    The importance of the questions arising in this case, and the imperative necessity of a wise and just decision, can hardly be overestimated.    These questions involve

not only the right of a court to enforce due respect for its authority, and punish acts which tend to diminish such proper respect and interfere with the performance of its important public duties, but they involve as well the preservation of personal liberty as against summary imprisonment, the right of free speech, the freedom of the press, and the proper limit which may be placed upon the discussion of the fitness of candidates for public office. Fully realizing, as we believe, the gravity of these questions, we have given the case the fullest and most careful consideration within our power, in order that no false step, involving at once consequences disastrous and far-reaching, might be taken. The questions involved upon which all minor questions depend are but two in number: First, did the publications in question constitute a criminal contempt of court? and, second, is the writ of prohibition the proper remedy?

1. Did the publications constitute a criminal contempt of court? In considering this question it has not been deemed necessary to reproduce the articles in this opinion. It is sufficient to say of them that, among other things, they charged *Judge Bailey* with having been intentionally partial and corrupt in the trial of certain causes in his court. If the charges were true, the unfitness of *Judge Bailey* for his office was certain. That they were intemperate in tone, and well calculated to exasperate their subject, may be at once admitted. It seems probable also that from their very intemperance they were rather calculated to injure the cause which they were designed to help than otherwise. These questions are, however, foreign to the present inquiry; the question being, not whether *Judge Bailey* as an individual was grossly slandered, but whether a criminal contempt of court was committed.

A criminal contempt at common law may be generally defined as any act which tends either to obstruct the course of justice or to prejudice the trial in any action or proceed-

State ex rel. Attorney General vs. Circuit Court for Eau Claire County.

ing then pending in court. The power of courts of superior jurisdiction created by the constitution to punish such acts is necessarily inherent in such a court, and arises by implication from the very act of creating the court. A court without this power would be at best a mere debating society, and not a court. These principles have been recognized in all courts from time immemorial. *In re Rosenberg,* 90 Wis. 581–588; *Ex parte Robinson,* 19 Wall. 505; Rapalje, Contempt, § 1. Doubtless, this power may be regulated, and the manner of its exercise prescribed, by statute, but certainly it cannot be entirely taken away, nor can its efficiency be so impaired or abridged as to leave the court without power to compel the due respect and obedience which is essential to preserve its character as a judicial tribunal. The decisions on this point are well nigh unanimous. See authorities collated in note to *Percival v. State,* 50 Am. St. Rep. 568–572. It is, and must be, a power arbitrary in its nature, and summary in its execution. It is, perhaps, nearest akin to despotic power of any power existing under our form of government. Such being its nature, due regard for the liberty of the citizen imperatively requires that its limits be carefully guarded, so that they be not overstepped. It is important that it exist in full vigor; it is equally important that it be not abused. The greater the power, the greater the care required in its exercise. Being a power which arises and is based upon necessity, it must be measured and limited by the necessity which calls it into existence. The ultimate question, then, is, Is it necessary to the due administration of justice by a court that the publication of such an article as the one before us be punished as a criminal contempt?

Before discussing the authorities upon this question, it will be well to state the exact facts which were charged in the petition of Messrs. Hayden and Frawley in the circuit court. It was alleged that the articles were written by *Doolittle,* and by his request published by *Ashbaugh;* that court was

in session, with a full panel of jurors, trying jury cases, and that the articles were by the defendants generally circulated in the city of Eau Claire, and were distributed to various persons residing in this state, and were by them distributed and delivered to the officers "of said court, and to persons summoned as jurors in said court," and "were read by the officers and jurors so in attendance in said court." The articles themselves referred to no cases pending or on trial, but contained only strictures upon the general character of the judge, and his acts in former cases which had been concluded. The fact should also be remembered that a judicial election was impending, and that the judge was a candidate for re-election.

It is evident that, if any contempt was committed, it was what is known as constructive contempt, as distinguished from direct contempt. Rapalje, Contempt, § 22. Numerous cases are cited which are claimed to support the contention that such publications constitute constructive contempt of court. Examination of these cases, however, reveals the fact that the great majority of them simply hold that publications of this nature, which refer to an action or proceeding *then pending* and undecided, constitute contempt. Such cases are *In re Sturoc,* 48 N. H. 428; *State v. Frew,* 24 W. Va. 416; *People v. Wilson,* 64 Ill. 195; *Territory v. Murray,* 7 Mont. 251; *In re Cheeseman* (N. J. Sup.), 6 Atl. Rep. 513; *Cooper v. People ex rel. Wyatt,* 13 Colo. 337; *State ex rel. Phelps v. Judge of Civ. Dist. Ct.* 45 La. Ann. 1250. The principle on which these cases are placed is that such publications have a natural tendency to prejudice the course of justice in the particular cause then pending, and hence constitute constructive contempt. It is unnecessary in the present case, nor would it be proper, to affirm or deny the correctness of these decisions. Such a case is not now before us. The publications complained of here referred to no pending litigation,.

nor is it charged that they were circulated or brought into the immediate presence of the court.

Passing from this class of cases, we come to the cases which involve the consideration of adverse or libelous newspaper comments upon the acts of a court in actions already past and ended, and here we find much contrariety of opinion, not to say confusion, in the utterances of courts and text writers. Cases may be found holding directly that such publications constitute constructive contempts, and may be punished as such. *State v. Morrill,* 16 Ark. 384; *Comm. v. Dandridge,* 2 Va. Cas. 409; *In re Chadwick* (Mich.), 67 N. W. Rep. 1071. The reasoning upon which such decisions rest is that such publications tend to diminish the respect due to the court in the trial of future causes, and thus impair its usefulness. This doctrine is certainly extreme. Carried to its ultimate conclusion, it would call for the punishment of any adverse criticism on the official conduct of a sitting judge, and absolutely prevent all public or private discussion of court proceedings. All such discussion, if unfavorable to the ability or honesty of a judge, must tend, in some small degree at least, to undermine public confidence in the court in the future. On the other hand, many well-considered cases may be found in which it is distinctly held that such publications do not constitute contempt, and cannot be punished as such. Some of these cases go upon the ground that, even if such publications were punishable as constructive contempts at common law, still that it was competent for the legislature to limit such power by statute, and that such power has been limited by statutes substantially similar to our own. R. S. sec. 2565. Some of the cases, however, distinctly hold that under our form of government such publications do not constitute contempt, and that to punish them as such would be a serious invasion of the great constitutional guaranties of freedom of speech and of the press. The following decisions

are cited as enunciating one or both of these principles: *Stuart v. People,* 4 Ill. 395; *Storey v. People,* 79 Ill. 45; *Dunham v. State,* 6 Iowa, 245; *State v. Anderson,* 40 Iowa, 207; *Cheadle v. State,* 110 Ind. 301; *In re Robinson,* 117 N. C. 533; *State v. Sweetland,* 3 S. Dak. 503; *Percival v. State,* 45 Neb. 741.

In our own state the question has never been discussed in any opinion. It is a fact, however, that a case arose and was decided upon the merits early in the history of this court, while Chief Justice WHITON was on the bench, involving this very question, although for some reason no opinion was ever filed. The original records are still preserved in the clerk's office, and they disclose the following facts: In October, 1854, Messrs. Brown and Calkins published a newspaper in Madison, and during the October term of the circuit court for Dane county published an article charging corruption and malice upon the grand jury and the presiding judge of the court in the finding of an indictment against the school-land commissioners. Proceedings were instituted in the circuit court as for criminal contempt, and, after hearing, the court adjudged that a contempt had been committed, and adjudged that a fine be imposed upon both defendants. The cause was removed to this court upon writ of error, was afterwards argued, and the judgment was wholly reversed on the 21st day of May, 1858. Upon the outside of the record appears the notation, "*Stuart v. People,* 3 Scam. 402," and in the volume of court minutes appears the notation, "Opinion by the chief justice." Although no opinion was ever in fact filed, there seems to be no escape from the conclusion that this court at that time held that the publication before it did not constitute a contempt. No other ground appears upon which the judgment could have been reversed upon the merits.

But, whatever may be thought of the case just mentioned or of its weight as authority, we are well persuaded that

State ex rel. Attorney General vs. Circuit Court for Eau Claire County.

newspaper comments on cases finally decided prior to the publication cannot be considered criminal contempt, and our reasons for that conclusion will be briefly stated.

Important as it is that courts should perform their grave public duties unimpeded and unprejudiced by illegitimate influences, there are other rights guaranteed to all citizens by our constitution and form of government, either expressly or impliedly, which are fully as important, and which must be guarded with an equally jealous care. These rights are the right of free speech and of free publication of the citizen's sentiments "on all subjects." (Art. I, Amendm. Const. of U. S.; Const. Wis. art. I, sec. 3); the right of trial by jury (Const. Wis. art. I, secs. 5, 7); also the right to freely discuss the merits and qualifications of a candidate for public office, being responsible for the abuse of such right in a proper action at law. In the present case it is of the utmost importance to bear in mind that *Judge Bailey* was a candidate before the people for re-election. Had he been a candidate for any other office, it would not be contended by any one that the publications in question would afford ground for any other legal action than an action for libel in the regular course of the law; but the claim is that because he was a judge, and was holding court at that time, such unfavorable criticism of his past actions may be summarily punished by the judge himself as for contempt. Truly, it must be a grievous and weighty necessity which will justify so arbitrary a proceeding, whereby a candidate for office becomes the accuser, judge, and jury, and may within a few hours summarily punish his critic by imprisonment. The result of such a doctrine is that all unfavorable criticism of a sitting judge's past official action can be at once stopped by the judge himself, or, if not stopped, can be punished by immediate imprisonment. If there can be any more effectual way to gag the press, and subvert freedom of speech, we do not know where to find it. Under such a rule the merits of a sitting

State ex rel. Attorney General vs. Circuit Court for Eau Claire County.

judge may be rehearsed, but as to his demerits there must be profound silence. In our judgment, no such divinity as this "doth hedge about" a judge; certainly not when he is a candidate for public office.

Recurring to the question with which the discussion opened, namely, Is it necessary that a court should possess this power? we feel bound to hold that, considering the guaranteed rights of the citizen just referred to, no such power as this is necessary for the due administration of justice. It may be freely admitted that under the common law as administered in England the mere writing contemptuously of a superior court or judge has been declared a constructive contempt. 4 Bl. Comm. 285. We, however, adopted no part of the common law which was inconsistent with our constitution (Const. Wis. art. XIV, sec. 13), and it seems clear to us that so extreme a power is inconsistent with, and would materially impair, the constitutional rights of free speech and free press.

But it is claimed that the publication constituted a criminal contempt, within the provisions of our statute. Sec. 2565, R. S., defines criminal contempts, and divides them into seven classes. Of these classes only the first and the sixth have any possible bearing upon the case. These classes are: "(1) Disorderly, contemptuous, or insolent behavior committed during its sittings, *in its immediate view and presence,* and directly tending to interrupt its proceedings, or to impair the respect due its authority." "(6) The publication of a false, or grossly inaccurate, report or copy of its proceedings; but no court can punish as a contempt the publication of true, full, and fair reports of any trial, argument, proceedings, or decisions had in such court." Certainly the publication in question does not fall within the first subdivision. Acts punishable under this provision must have been in the immediate view and presence of the court, and it was not charged in the complaint of Messrs. Hayden and Frawley

that any such act had been committed. It was not even alleged that the publication had been circulated in the court room. Nor does the sixth subdivision apply, because it was not charged that the references to the proceedings in court were in any respect false or inaccurate. It may well be doubted whether the publication itself could be well called in any proper sense a "report or copy" of the proceedings of the court, but, conceding that it could be so called, the charge of contempt must certainly allege that the report is "false or grossly inaccurate" in order to make a case of contempt. This is jurisdictional. If it be not alleged, no contempt is stated. Our conclusion is that the attempt to punish the publication in question as for contempt was in excess of the jurisdiction of the circuit court.

But another claim was made by the counsel who so ably represented *Judge Bailey* in this court, which requires some attention. It appears by the return that immediately upon the service of the alternative writ upon him, *Judge Bailey* announced that he would proceed no further with the pending proceedings, and that they were stayed. After making this announcement, however, the judge at once stated that a new contempt had been committed by *Ashbaugh* and *Doolittle in the immediate presence of the court* by the filing of their sworn return or affidavit in response to the original order to show cause stating that the charges in the newspaper articles were true; that this contempt was independent of the alleged contempt by publication, and was not included within the inhibition of the writ, and that he would at once punish them for this contempt. Thereupon the judge proceeded at once to adjudge them guilty of this new contempt, and sentenced them to imprisonment therefor. We are unable to agree with this contention. If, as we have held, the original publication was not contempt, and the attempt to punish it as such was in excess of the jurisdiction of the court, then certainly the defendants had

a right, when summoned into court, to allege its truth. They were forced, if they were in any degree honorable men and not mere slanderers, to allege the truth of the publication. Any other course would demonstrate their pusillanimity. It cannot be endured that a court, by unauthorized summary proceedings, should wring from a man such a declaration, and then abandon the original proceedings, and punish this forced declaration as contempt.

2. The question remains whether the writ of prohibition is the proper remedy. This writ issues only to restrain a court in the exercise of judicial functions outside or beyond its jurisdiction, and when there is no other adequate remedy. *State ex rel. De Puy v. Evans*, 88 Wis. 255; *Quimbo Appo v. People*, 20 N. Y. 531. Having held that the attempt to punish the publication in question as contempt was in excess of the jurisdiction of the circuit court, no reason is seen why the writ is not an apt and proper remedy, unless, indeed, there be other adequate remedies. We do not think that in a case like the present, where immediate imprisonment was threatened and about to be inflicted, either writ of error or *habeas corpus* can be said to be an adequate remedy. In either case the trial must have been concluded and sentence imposed before the writ could issue, and in the case of *habeas corpus* the imprisonment must have actually begun. There certainly is grave doubt whether *certiorari* would lie in any event. *Chittenden v. State*, 41 Wis. 285. In view of these considerations, it seems certain that neither of the last-named writs would afford an adequate remedy, even conceding that they would be applicable. Prohibition has been used in other jurisdictions in similar cases. *Reg. v. Lefroy,* 4 Moak's Eng. 250; *People ex rel. Wright v. County Judge*, 27 Cal. 151; *Williams v. Dwinelle*, 51 Cal. 442; *People ex rel. Pierce v. Carrington*, 5 Utah, 531.

During the preparation of this opinion, the writer has been furnished with a pamphlet discussion of the law of con-

tempts, prepared by *Judge Bailey*. Although arriving at different conclusions from those reached by us, *Judge Bailey's* discussion of the question bears the marks of his well-known legal ability and industry, and it is but fair to say that it has been of much assistance in finding and considering authorities upon the interesting questions involved in this case.

The judgment in this case having already been entered and executed, no mandate is necessary.