## No. 9280.

### IN RE COTTINGHAM ET AL.

1. CONTEMPT—*Definition.* Language clearly contemptuous at common law is not so considered in our courts unless concerning a pending cause and tending to impede the due administration of justice, or manifestly wanton and malicious.

2. *Petition for Change of Judge.* A petition for the change of the judge in a pending cause, on account of bias and prejudice on his part, must set up the facts relied upon to show prejudice, in order that a reviewing court may be able to determine whether error occurred in denying the petition.

Even language which tends to humiliate a judge or lessen his influence in the community is not in all cases contemptuous.

*Hughes v. The People,* 5 Colo. 436, considered in the light of later decisions.

3. ——*Evidence as to Intent..* Parties charged with contempt in a petition for a change of judge on account of his bias, alleged

in their answer that the statements charged as contemptuous, were set up "for the sole purpose to set forth the prejudice of the judge * * * and were not intended to scandalize or impeach the good name" of his honor. Evidence to sustain this denial held admissible.

A conviction, without evidence of the falsity of these assertions of respondent's answer, held error.

To sustain a conviction a malicious intent must be proven and must be found in terms by the Court.

*Error to Clear Creek County Court, Hon. Royal R. Graham, Judge.*

*En banc.*

Mr. GEORGE L. NYE, Messrs. PERSHING, NYE, FRY & TALLMADGE, for plaintiffs in error.

Mr. EDWARD M. BABIN, Mr. EDWIN H. PARK, Mr. GREELEY W. WHITFORD, for the defendant in error, the people.

Opinion by Mr. Justice Teller.

THE County Court of Clear Creek County adjudged the plaintiffs in error guilty of contempt, and from that judgment they prosecute this writ of error.

Plaintiff in error Foley, as one of the administrators of an estate, with his co-administrator and two other parties, brought suit in a justice court in forcible detainer to obtain possession of certain real estate belonging to said estate and the other plaintiffs.

The defendants in that action, having been defeated, appealed the cause to the County Court.

Plaintiffs in error Davis, Whitney and Crist, attorneys for the plaintiffs, filed in said court a petition for a change of judge on the ground of bias and prejudice on the part of the county judge of said county.

The petition was verified by Foley, and was supported by affidavits by Foley and Cottingham.

The making and filing of these documents was adjudged to be contempt, and the parties were fined $100 each therefor.

The proceedings were instituted by a citation issued on

an affidavit which contained a copy of said petition and affidavits, and averred that the parties responsible for the same had gone beyond what was necessary, and had "transgressed the limitations of the rules with respect to such petitions and affidavits," and made charges reflecting upon the honor of the judge, and the purity of the court in the administration of justice, and by the language used had shown "a wicked, malicious purpose to wantonly scandalize the good name and character of the judge, and to bring him into public disgrace  *  *  *  and destroy his influence for usefulness as a judge and court in said county."

The affidavit for the citation was made by a member of a committee of three lawyers appointed by the County Court to investigate respondents' conduct.

From the report of this committee, and from the affidavit, it appears that the authors do not recognize the difference between the law of contempt as it is in England, and the modern law on the subject in this country.

As indicating this distinction, reference may be made to the fact that since an early day Federal courts have been by statute deprived of the power to punish as for a constructive contempt.

According to the overwhelming weight of authority in this country, language which was clearly contemptuous at common law is not to be considered so here unless it concerns a pending cause, tends to impede the due administration of law, or is manifestly wanton and malicious. *Storey v. People,* 79 Ill. 45, 22 Am. Rep. 158; *State v. Anderson,* 40 Iowa 207; *Cheadle v. State,* 110 Ind. 301, 11 N. E. 426, 59 Am. Rep. 199; *In re Robinson,* 117 N. C. 533, 23 S. E. 453, 53 Am. St. Rep. 596; *State v. Sweetland,* 3 S. D. 503, 54 N. W. 415; *Percival v. State,* 45 Neb. 741, 64 N. W. 221, 50 Am. St. Rep. 568; *State v. Circuit Court,* 97 Wis. 1, 72 N. W. 193, 38 L. R. A. 554, 65 Am. St. Rep. 90; *Works v. Superior Court,* 130 Cal. 304, 62 Pac. 507; *Ex parte Green,* 46 Tex. Cr. R. 576, 81 S. W. 723, 66 L. R. A. 727, 108 Am. St. Rep. 1035; *State v. Kaiser,* 20 Or. 50, 23 Pac. 964, 8 L.

R. A. 584; *State v. Tugwell,* 19 Wash. 238, 52 Pac. 1056, 43 L. R. A. 717; *In re Dalton,* 46 Kan. 253, 26 Pac. 673; *Ex parte Steinman,* 95 Pa. 220, 40 Am. Rep. 637; *State Board v. Hart,* 104 Minn. 88, 116 N. W. 212, 17 L. R. A. (N. S.) 585, 15 Ann. Cas. 197; *Ex parte Hickey,* 4 Smedes & M. (Miss.) 751; *Mullin v. People,* 15 Colo. 437, 24 Pac. 880, 9 L. R. A. 566, 22 Am. St. Rep. 414; In re Smith, 54 Colo. 486, 131 Pac. 277; and *Cooper v. People,* 13 Colo. 337, 373, 22 Pac. 790, 6 L. R. A. 430.

That the reason of the rule at common law does not apply here is recognized in the last case cited.

As is well known, justice in England was originally administered by the King in person, *in aula regia;* and later, when judges were appointed to sit for him, their persons were endowed with a portion of the dignity of the sovereign whose personal representatives they were. To speak disrespectfully of them was to disregard that "divinity which doth hedge a king." In this country, the sovereign people claim no attributes of divinity, and are under no illusion as to the fallibility of those who administer the law. Our people demand only that judges shall not be treated so as to interfere with the proper discharge of their official duties. Beyond that, they must rely upon the same law as other people for protection from defamatory attacks.

The foregoing views find ample support in the decisions of this court.

In *Hughes v. People,* 5 Colo. 436, relied upon to support the judgment, the language held to be contemptuous, as the opinion states, directly charged "the judge of the court wherein the cause was pending with colluding with the administrator and the attorney for the estate for the purpose of gaining an unjust and undue advantage against the plaintiff in error, who was then a party defendant to the proceedings. * * * It implies judicial corruption and unjust oppression on the part of the judge presiding."

This language related to the conduct of the judge in a pending case, and falls within the rule above stated. In the

court's discussion of what facts might properly be set out in an application for a change of judge, one view of the question was apparently overlooked. Manifestly, the petition is not intended merely to suggest to the judge matters already known to him because of which he ought not to try the case. It must set up the facts on which the party relies to show prejudice, so that a reviewing court will know what petitioner's grounds were, and be able to determine whether or not the court erred in not granting a change. The opinion contains some dicta apparently recognizing the common law rule as to the sanctity of a judge, which later decisions of this court show not to be a correct statement of the law in this country.

In *Cooper v. People, supra,* Judge Helm, in the opinion denying a rehearing, after pointing out that the opinion dealt only with alleged contempts from language concerning pending causes, said:

"The right of the press without fear of punishment for contempt, in the interest of the public good, to challenge the conduct of parties, jurors and witnesses, and to arraign the judge himself at the bar of public opinion, in connection with causes that have been fully determined, is not denied by the decision filed in this case."

In *Hamma v. People,* 42 Colo. 401, 94 Pac. 621, 15 Ann. Cas. 655, it is said:

"The proposition will hardly be disputed that in this class of contempts the libelous or slanderous publication must relate to *judicial action;* that it must have reference to a judicial decision, order or proceeding in a cause pending or completed."

Again it is said (page 410):

"It is urged that such a publication as the one under consideration interferes with and embarrasses the administration of justice; that it tends to bring the court and judge into disrepute; and that it destroys public confidence in both and impairs their usefulness. The correctness of these observations may be conceded. But malconduct of the

judge in discharging a private trust, or false and malicious attacks upon his integrity as an individual, also reflect upon him as a public official and tend to produce the same unfortunate results. Yet no intelligent lawyer would sanction proceedings by contempt under the latter circumstances.

This extraordinary remedy is given primarily for the purpose of safeguarding the interests of parties to judicial causes or proceedings, and secondly for the purpose of protecting the court itself from coercion or interference while in the discharge of its judicial duties. And the fact that if the publication be false or malicious, the judge will suffer injustice and injury in his official as well as in his private capacity, is not deemed sufficient to justify the invoking of this summary proceeding under circumstances such as are presented in the case at bar; a proceeding in which the injured person himself acts as judge, tries the accused in a manner largely *ex parte,* and upon conviction imposes a fine or imprisonment, or both, at discretion."

In a more recent case, *In re Smith, supra,* we held again that it was necessary in a petition for a change of judge to set out in detail the facts upon which the allegation of prejudice was based; and that the *intent* of the parties in making the statements concerning the judge must be determined in the contempt proceedings.

In that case, as in this, the attorney first applied to the judge informally, stating that his clients thought the judge was biased, and that it was hoped that a change of judge might be ordered without filing of an application for such change, which would necessarily contain the grounds upon which the belief in the judge's bias was based.

There, as here, the judge declined to consider an informal application, and practically compelled the filing of an application.

In that case, the affidavit charged that the statements alleged to be contemptuous "were false, unwarranted, and wickedly and maliciously intended to constitute an attack upon the honor and integrity of the court." No evidence

was received, and this court held that without proof of that charge the court had no jurisdiction to pronounce judgment.

In this case the affidavit does not charge that the statements are false, but only that they are made with a wicked and malicious purpose to scandalize the judge, etc.

In the brief filed in support of the judgment it is repeatedly asserted, as it was in the affidavit for the citation, that the "offense allegations were unnecessary, and tended to humiliate, ridicule and disgrace the judge," etc.

The respondents in answer alleged "that the facts set forth in the petition and affidavits were set forth for the sole and only purpose of showing and setting forth the prejudice of the judge, in order to comply with the decisions of the Supreme Court of Colorado, which require that all the facts and circumstances upon which the allegations of prejudice are predicated must be set forth in detail"; and, further, that they were not intended to scandalize the good name of the judge, but for the purpose of showing conclusively the bias of the judge.

This was a denial of the charge in the affidavit, and our decisions above cited made it an issue vital to the case. And yet objections to testimony by respondents to show their good faith and belief that it was necessary to state the facts as they were stated were sustained, and a judgment of contempt entered, without testimony or findings on that issue. If the allegations were true, made in respectful language, and in an honest belief that they were necessary to obtain the relief sought, they were not contemptuous. In the absence of evidence of their falsity and that they were maliciously made, no contempt was shown.

The presumptions are in favor of respondents, and, as the attorneys who appeared at the hearing as *amici curiae* admitted, the burden was upon them to establish that the statements were contemptuous in law.

Not only must there be a preponderance of evidence to show the malicious intent, but such intent must be found,

in terms, by the court to have existed. *Tracey v. State,* 28 Ohio C. C. 453; *State v. Stillwill,* 80 Ore. 610, 157 Pac. 980; *Krueger v. Krueger,* 32 S. D. 470, 43 N. W. 368; and *In re Dealton,* 105 N. C. 59, 11 S. E. 234.

There was no trial of that issue and no finding upon it, and for that reason, if for no other, the judgment must be reversed.

In justice to the respondents, however, it should be said that they were not guilty of contempt.

They presented to the court, in a respectful manner, facts which they might well suppose would render the court prejudiced against the plaintiffs. These facts concerned, in part, past transactions with the bank of which two of the plaintiffs were the owners, and one of the plaintiffs was the cashier, and, in part, an alleged meddling by the judge in the domestic affairs of Foley, of a nature which indicated that the judge was unfriendly to him.

No matter set out concerned the judge's action in the pending case.

In a contempt case growing out of an application for a change of judge, it was held that an attorney was not in contempt if, in good faith, he proceeded by ordinary legal means to defend his clients' rights; and it was there said:

"Obviously, an attorney who would refrain from thus proceeding, or who would induce his client to thus refrain, where he was acting in good faith and upon an honest belief that such action was necessary to preserve his client's interests or to maintain his own rights, an attorney who under such circumstances would fail to act, through fear of consequences either in the way of disfavor upon the part of the judge or punishment by fine or imprisonment, would and ought to be branded as a craven and a poltroon, and he would be quite unworthy of his high commission as a member of the bar. He would be recreant to the honorable traditions of the bars of England and America, which bodies have always been in the van in every movement and effort to resist the tyrannical exercise of arbitrary power by gov-

ernment or its agents." *Hunt v. State,* 27 Ohio C. C. 16; affirmed in *State v. Hunt,* 72 Ohio St. 643, 76 N. E. 1132.

It has been said that "the preservation of the independence of the bar is vital to the due administration of justice, and its members can not be imprisoned for contempt for error in judgment when advising in good faith and in the honest belief that their advice is well founded." *In re Watts,* 190 U. S. 1, 47 L. Ed. 933, 23 Sup. Ct. 718.

The respondent attorneys assumed liability for the language of the affidavits, as well as of the petition, and they appear to have acted in perfect good faith.

It is not true, as counsel contend, that language which tends to humiliate a judge or to lessen his influence in his community is in all cases contemptuous. In a Kansas case, *In re Pryor,* 18 Kans. 72, 26 Am. Rep. 747, Judge Brewer said:

"After a case has been disposed of, a court or judge has no power to compel the public, or any individual thereof, attorney or otherwise, to consider his rulings correct, his conduct proper, or even his integrity free from stain."

To the same effect are several of the cases above cited: e. g., *State v. Circuit Court,* 97 Wis. 1, where it was held that the fact that a judge was slandered did not of itself prove that a contempt had been committed.

The citation from *Hamma v. People, supra,* is conclusive as to the position of this court upon that question.

The respondents were not guilty of contempt, and the judgment should be reversed, and the citation dismissed, and it is so ordered.