THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE SUPREME COURT OF THE STATE OF NEW YORK *v.* ROY L. ALBERTSON.

In the Matter of ROY L. ALBERTSON, Charged with Criminal Contempt, Appellant.

Fourth Department, November 21, 1934.

*Michael H. Cahill,* for the appellant.

PER CURIAM. The charge of contempt of court was formally founded upon section 750 of the Judiciary Law (formerly section 8 of the Code of Civil Procedure) and the offense would be a " criminal contempt " if a contempt at all. (Judiciary Law, §§ 750, 751.)

But the proceeding as initiated and conducted is technically a civil proceeding. (*Eastern C. S. Co.* v. *B. & M. P. I. U., Local No. 45,* 200 App. Div. 714.) The claimed offense was not committed in the " immediate view and presence " of the court (Judiciary Law, §§ 750, 751), but is claimed to have been a " publication of a false or grossly inaccurate report of its proceedings " (§ 750, subd. 6), in that the defendant made a public broadcast by radio in which he charged the Supreme Court justice who had presided in a certain Niagara Share Corporation lawsuit of gross misconduct on the bench, of deliberately mishandling the case and of flagrantly failing to be impartial.

The defendant was held in contempt and sentenced to fine and imprisonment. Various points are raised by appellant, of which the first in importance is that the broadcast charged was not a contempt of court in that it was not a publication of the character contemplated by the statute.

This is a subject which has been much under discussion in the courts of this country other than those of this State. The courts of last resort in some of our States, discussing both the common law and statutes, recognize the power of the courts to punish for contempt those who publish libelous articles concerning the conduct of the courts in cases which have been determined, as well as those pending. (See *Burdett* v. *Commonwealth,* 103 Va. 838; 48 S. E. 878; *State* v. *Morrill,* 16 Ark. 384; *State ex rel. Crow* v. *Shepherd,* 177 Mo. 205; 76 S. W. 79; *State ex rel. Haskell* v. *Faulds,* 17 Mont. 140; 42 P. 285.) This theory reflects the old English common law which was zealous in defense of the dignity of the courts and of an " untainted fountain of justice " and vigorously upheld the right of courts to summon and punish not only those who wrongfully interfered with the normal progress of current court proceedings but also those who by speech or other conduct at any time lowered the courts from their superior estate in the estimation of the public. (See comprehensive article in 28 Columbia Law Review, 1928, p. 525.) However, both under statutes and the common law the great weight of authority now is to the effect that — in so far as proceedings to punish for contempt are concerned — comment upon the behavior of the court in cases fully determined in the particular court criticised is unrestricted under our constitutional guaranty of liberty of the press and free speech (N. Y. Const. art. I, § 8) — especially in the absence of a statute of direct application to the contrary. This view, in brief, is based upon the theory that — keeping our constitutional guaranties in mind — libelous publications which bear upon the proceedings of a court while they are pending may in some way affect their correct determination and are

properly the subject of contempt proceedings. On the other hand, such publications or oral utterances of entirely retrospective bearing come within the sphere of authorized comment unless they affect a judge personally, when he has his remedy in an action of libel or slander as does any other individual thus offended against. He has the right to bring an action at law before a jury of his peers. Cases of this import are: *Craig* v. *Hecht* (263 U. S. 255, particularly remarks of Chief Justice TAFT at p. 278); *State Bd. of Law Exam.* v. *Hart* (104 Minn. 88, 115; 116 N. W. 212); *Cheadle* v. *State* (110 Ind. 301; 11 N. E. 426); *State* v. *Kaiser* (20 Ore. 50; 23 P. 964); *State ex rel. Atty.-Gen.* v. *Circuit Ct.* (97 Wis. 1; 72 N. W. 193); *State* v. *Sweetland* (3 S. D. 503; 54 N. W. 415); *Percival* v. *State* (45 Neb. 741; 64 N. W. 221); *Patterson* v. *Colorado* (205 U. S. 454, 463); *Cornish* v. *United States* (299 Fed. 283); *Zuver* v. *State* (188 Ind. 60; 121 N. E. 828); *People* v. *Hoyne* (195 Ill. App. 272); *People* v. *Gilbert* (281 Ill. 619; 118 N. E. 196); *Seltzer* v. *State ex rel. Read* ([Ohio Appeals, 8th Dist., Cuyahoga Co., decided March 6, 1930]); *State* v. *Anderson* (40 Iowa, 207).

We have come to the conclusion that the substance of the broadcast charged was not a " publication " such that a contempt proceeding will lie. If not, it was not a " criminal contempt " (Judiciary Law, § 750, initial paragraph; *Briddon* v. *Briddon*, 229 N. Y. 452; *People ex rel. Munsell* v. *Court of Oyer & Terminer*, 101 id. 245, 249, 250.) It was not an enumerated " civil contempt " (Judiciary Law, § 753), wherefore sections 754–781 of the Judiciary Law have no application, and no questions involving the practice prior to the hearing, as laid down in those sections, are before us. The case of *Winter* v. *Anderson* (242 App. Div. 430) having been concluded when the broadcast was made — so far as the trial justice presiding therein was concerned — judgment having been entered and an appeal taken to this court, there was no action or proceeding pending before the trial court at the time of the offense charged. Under the circumstances, when the matter contained in the broadcast is carefully considered, it is our opinion that the intemperate and derogatory language is an affront to the justice named, but not an affront to the judiciary such that this particular contempt proceeding can be sustained.

This is a novel question in this State. Wherefore we make the following additional comment:

The identity of the accused as the claimed offender was established at the hearing only by an unsworn statement " upon the knowledge " of the justice who presided at the trial of the lawsuit involved and at the contempt proceeding; such knowledge being based as claimed upon communications in the nature of admissions stated to have

been made to the justice by the accused after the claimed offense was committed. This was not enough. Such knowledge must be derived from acts done in the presence of the court as such and — in the interest of orderly procedure — cannot result from unverified hearsay statements or even from unverified admissions claimed to have been made out of court to a justice thereof. (*People ex rel. Barnes* v. *Court of Sessions*, 147 N. Y. 290, 296.) For statutes providing the punishment for such a contempt of court must be strictly construed in favor of accused persons. (*Rutherford* v. *Holmes*, 5 Hun, 317; affd., 66 N. Y. 368.) The defendant did not admit his identity as the claimed culprit but instead negatived all concession by saying " not guilty " through his counsel.

The order appealed from should be reversed upon the law and the proceeding dismissed.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and LEWIS, JJ.

Order reversed on the law and proceeding dismissed.