THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* POST STANDARD COMPANY, HENRY H. KELLER, MARIO ROSSI, LOREN BAILEY and JOHN N. WHITNEY, Respondents.

Fourth Department, April 11, 1963.

*Joseph A. Ryan, District Attorney,* for appellant.

*Bond, Schoeneck & King* (*John C. Kinney* of counsel), for respondents.

*Per Curiam.* The defendant newspaper, its publisher and editors were indicted for a violation of subdivision 7 of section 600 of the Penal Law. The pertinent provisions are:

"A person who commits a contempt of court, of any one of the following kinds, is guilty of a misdemeanor:

"7. Publication of a false or grossly inaccurate report of its proceedings. But no person can be punished as provided in this section, for publishing a true, full, and fair report of a trial, argument, decision, or other proceeding had in court."

The court below sustained a demurrer to the indictment on the grounds that "the facts stated do not constitute a crime". (See Code Crim. Pro., § 323, subd. 4.) An alternative ground for demurrer not passed upon by the trial court is that "the indictment contains matter, which, if true, would constitute a legal justification or excuse for the acts charged, or other legal bar to the prosecution." (Code Crim. Pro., § 323, subd. 5.)

The challenged indictment reads as follows:

"The Grand Jury of the County of Onondaga by this indictment accuse THE POST STANDARD COMPANY, HENRY H. KELLER, MARIO ROSSI, LOREN BAILEY and JOHN N. WHITNEY, of the crime of Contempt of Court, in Violation of § 600 (7) of the Penal Law of the State of New York, Misdemeanor, committed as follows:

"The said THE POST STANDARD COMPANY; Henry H. Keller, Publisher; Mario Rossi, Managing Editor; Loren Bailey, News Editor; and John N. Whitney, City Editor; on or about the 18th day of July, nineteen hundred sixty-two, at the City of Syracuse, in this county, did publish a false and grossly inaccurate report of the proceedings of the Onondaga County Court, held in Part I thereof, at the County Court House in the City of Syracuse, New York, on the 17th day of July, 1962, the Honorable Leo W. Breed, Judge presiding, in that the defendants did, in the first six editions of the newspaper known as The Post Standard, dated July 19, 1962, falsely report the proceedings of the said Court as follows:

"'*Jail Probe Cases*

"' DEPUTY HELD; SARDINO ACCUSED OF BEATING

"'. . . Meanwhile, it was revealed that on Tuesday a man charged in County Court that he was beaten by Sgt. Thomas Sardino of Dist. Atty. Joseph A. Ryan's staff. Percy Lee Holloway said that while Sardino beat him, another policeman held a cocked gun in his ear.

"'. . . Holloway said Sardino punched him in the stomach and knocked him to the ground when he said he didn't know anything. Holloway told Judge Breed that while he was on

the ground the other policeman put the barrel of a pistol in his ear, cocked the weapon and told him to "start remembering." '

"The said portions of the newspaper story aforesaid were false and grossly inaccurate, in that the said Percy Lee Holloway made no accusations concerning Sgt. Thomas Sardino, all as shown in the official minutes of the said proceedings; and the said publication of the false and inaccurate statements aforesaid are in violation of § 600 (7) of the Penal Law of the State of New York and against the Peace of the People of the State of New York and their dignity."

It is readily apparent that the indictment charges in the statutory language. While this section of the statute may have had its inception in the general power of the court at common law to punish for contempt (see Revisors' Reports to the Legislature, 1828, vol. IV, pt. III, ch. III, tit. II, art. I, notes pp. 11–12), here we are concerned solely with a statutory violation. Therefore, numerous decisions dealing with the court's general common-law contempt powers insofar as they interfere with the constitutionally protected freedoms of speech and press do not control (see *Wood* v. *Georgia,* 370 U. S. 375; *Craig* v. *Harney,* 331 U. S. 367; *Pennekamp* v. *Florida,* 328 U. S. 331; *Bridges* v. *California,* 314 U. S. 252). Indeed, the opinion of the Supreme Court in *Bridges* v. *California* (*supra,* pp. 260–261) sets forth the distinction which we make: "It is to be noted at once that we have no direction by the legislature of California that publications outside the court room which comment upon a pending case in a specified manner should be punishable. As we said in *Cantwell* v. *Connecticut,* 310 U. S. 298, 307–308, such a ' declaration of the State's policy would weigh heavily in any challenge of the law as infringing constitutional limitations.' But as we also said there, the problem is different where ' the judgment is based on a common law concept of the most general and undefined nature.' [Citations.] For here the legislature of California has not appraised a particular kind of situation and found a specific danger sufficiently imminent to justify a restriction on a particular kind of utterance. The judgments below, therefore, do not come to us encased in the armor wrought by prior legislative deliberation."

While the statute before us has historic roots, we find that its enactment was the product of the type of legislative appraisement respected in the *Bridges* case. The Report of the Revisors, at the time of the codification of the general criminal contempt section, of which this is a part, noted that "they have herein pursued their general plan, to define and limit undefined powers, wherever it was possible, as well for the information as the

protection of the citizen '' (Revisors' Reports, 1828, *supra*, note p. 12). The Revisors' note to the subdivision in question specifically confirms the consideration accorded to it. '' This subdivision is presented with a view to obtain the expression of the sense of the legislature upon the subject in question. Some cautionary provisions seem useful.'' (Revisors' Reports, 1828, *supra*, note p. 11.) That the existence of the same rights safeguarded by the Constitution influenced the Legislature's judgment in this instance is evident in the narrowness of the proscription. This is exemplified by the precise language of subdivision 7. The only publication barred is a false or grossly inaccurate account of the proceedings of the court, for there may be no conviction if the publication is true, full and fair.

The courts of this State have faithfully adhered to this restrictive view of the offense. It has been held that comment on the proceedings of the court not purporting to give an account of the proceedings, even if libelous, is not criminal contempt. (*People ex rel. Barnes* v. *Court of Sessions*, 147 N. Y. 290.) In another instance, while noting that '' The conduct of the relator in thus attempting to get his views of the case before the public and thereby perhaps indirectly influence the jury is most reprehensible,'' the court held that inasmuch as the publication did not purport to be an account of the court's proceedings it could not constitute criminal contempt. (*People ex rel. Brewer* v. *Platzek*, 133 App. Div. 25, 28; see, also, *Hill* v. *Lyman*, 283 App. Div. 23; *People ex rel. Supreme Court* v. *Albertson*, 242 App. Div. 450.)

As so limited, the statute does not threaten any constitutionally protected rights of speech and press. We know of no law that sanctions, under the guise of freedom of expression, the publication of falsehoods concerning judicial proceedings. Indeed, freedom of the press entails a responsibility not to publish the false or grossly inaccurate. We adopt the language of the Supreme Court of Rhode Island in *Matter of Providence Journal Co.* (28 R. I. 489, 492–493):

'' It is the right of a newspaper, as of any citizen, in public or in private, to discuss the opinions of the court, to criticise their reasoning or to question by sober argument the soundness of their conclusions, but not to misstate these conclusions.

'' When a newspaper takes up the task of informing the public what the decisions of courts are, it holds itself out to be equipped with suitable instruments for that work.''

We cannot say, then, that in enacting this statute the Legislature of this State exceeded its powers.

It is urged that the indictment is deficient in that it contains no allegations of an intent to deny the dignity and authority of the court. The indictment, however, is in the language of the statute and nothing in the statute requires that there be an intent to make a false or grossly inaccurate publication. Specific intent is not an element of this offense. As was said in the *Providence Journal* case (*supra,* p. 493) in which the publisher was found guilty of a common-law contempt: "A peculiarly lamentable feature of the affair is the present inability of the respondent to comprehend its offence: ' it respectfully submits that an unintentional error, . . . does not constitute an offence . . . such as to make it liable to punishment for contempt.' * * * The misstatement arose from recklessness or incompetence, and the respondent must not employ reckless or incompetent persons for such service. A blunder in this connection produces the same evil consequences as an intentional misrepresentation."

The indictment, charging as it does the facts constituting the crime, in the words of the statute, and containing allegations as to time, place, and other circumstances sufficient to identify the offense and apprise the defendants of the crime with which they are charged, must be sustained. (*People* v. *Finkelstein,* 9 N Y 2d 342, 346; *People* v. *West,* 106 N. Y. 293, 295.)

The second ground of the demurrer, not passed upon by the court below, is that the indictment contains matter which, if true, would constitute a legal justification or excuse for the acts charged or other legal bar to the prosecution (see Code Crim. Pro., § 323, subd. 5). The facts urged as a bar to the prosecution are the allegations that the published account, dated July 19, 1962, recounted proceedings of two days earlier. It is argued that the proceedings being concluded, the alleged publication does not constitute a contempt of court. For this proposition defendants rely upon *Hill* v. *Lyman* (283 App. Div. 23, *supra*) and *People ex rel. Supreme Court* v. *Albertson* (242 App. Div. 450, *supra*), both of which reaffirm the citizen's right to comment upon and criticize the court's handling and disposition of matters free from the threat of punishment for contempt. This has nothing to do with the statutory violation with which we are here concerned for the publication of a false and grossly inaccurate account of the proceedings of the court is as unlawful at the conclusion of a case as it is during its pendency.

We are not unmindful of the many cases that acknowledge and do not disapprove of the right of fair criticism of judicial decisions and procedures. (See, e.g., *Craig* v. *Harney,* 331 U. S. 367, *supra*; *Pennekamp* v. *Florida,* 328 U. S. 331, *supra*; *Bridges*

v. *California,* 314 U. S. 252, *supra; Hill* v. *Lyman,* 283 App. Div. 23, *supra; People ex rel. Supreme Court* v. *Albertson,* 242 App. Div. 450, *supra.*) It is necessary that such rights be jealously preserved. But the authorities which recognize and protect such rights, considered by the Judge below and basic in his reasoning are here inapplicable. Also, it is appropriate to observe that these authorities deal with common-law contempts decided after trial of the issues raised in the contempt proceedings.

Furthermore, in sustaining the demurrer the court below took judicial notice of the proceedings before the County Court which evoked the newspaper report. Such an examination was improper. An indictment must stand or fall on its face, and its allegations must be accepted as true when they are challenged, as here, by a demurrer. Although the court may take judicial notice of statutes, ordinances and the like, an examination of testimony and a factual determination therefrom as to whether the allegations of the indictment are correct is highly erroneous. (*People* v. *Kalbfeld,* 124 Misc. 200; *People* v. *Squillante,* 12 Misc 2d 514.)

The defendants may have a jury trial which in itself distinguishes this from a summary common-law contempt proceeding.

We find the indictment on its face legally sufficient to withstand the demurrer and therefore the order appealed from should be reversed, the demurrer disallowed, and the indictment reinstated.

WILLIAMS, P. J., BASTOW, GOLDMAN, McCLUSKY and HENRY, JJ., concur.

Order unanimously reversed on the law, demurrer disallowed, and indictment reinstated.